CHARLES R. JONES, Judge.
 

 h Irina Schmidt, the appellant, appeals the judgment of the district court that: (1) denied her exception of no cause of action; (2) modified the visitation schedule of the minor children; (3) failed to grant her a new trial as to the right of first refusal; (4) refused to amend its judgment as to an alleged error in time calculation; and (5) ordered that the minor children attend St. Clement of Rome School. We affirm.
 

 Irina Schmidt and the appellee, Douglas Schmidt, were married on April 18, 1998, in Louisiana. There were two children born after marriage: Douglas Michael Schmidt, Jr. (b. June 30, 2000), and Michael Douglas Schmidt (b. June 11, 2002).
 

 On May 6, 2004, the district court issued an
 
 Ex Propio Motu
 

 [1]
 

 Amended Judgment
 
 which ordered Mr. Schmidt and Ms. Schmidt to share joint custody of their two minor children. In addition, the judgment also named Mr. Schmidt and Ms. Schmidt co-domiciliary parents of their minor children.
 

 In the May 6, 2008,
 
 Ex Propio Motu Amended Judgment,
 
 the district court granted the following visitation schedule:
 

 LIT IS FURTHER ORDERED, ADJUDGED AND DECREED that effective immediately, Douglas Schmidt shall exercise visitation with the minor children on Thursday after school to Monday mornings at 8:30 a.m. every other week. On alternating weeks, Mr. Schmidt shall exercise visitation always after school until Friday morning at 8:30 a.m.
 

 Neither party was awarded sole custody of the children. However, as a result of the ordered visitation schedule, Mr. Schmidt and Ms. Schmidt were involved in many volatile confrontations while exchanging the minor children.
 

 On July 24, 2007, Mr. Schmidt filed his
 
 Motion and Order for an Amendment of Custody Judgment and to Send Minor Children to St. Clement of Rome School,
 
 seeking to modify the May 6, 2004 judgment. In pertinent part, the motion stated:
 

 Plaintiff proposes that the visitation provision of the Custody Judgment be amended as follows:
 

 
 *200
 
 The plaintiff and the defendant share visitation on alternate weeks, so plaintiff on the Monday of his visitation would pick up the children at the school and drop them off the following Monday morning at school. In other words, each parent would have the children for seven days on a week to week basis.
 

 In response to Mr. Schmidt filing his motion to amend the custody judgment, Ms. Schmidt filed an exception of no cause of action in which she asserted that Mr. Schmidt did not state a cause of action, nor did he satisfy the requisite burden of proof necessary to establish that a change of custody was warranted.
 

 Following an August 8, 2007, hearing on the matter, the district court rendered judgment in open court which denied Ms. Schmidt’s exception of no |...cause of action,
 
 [2]
 
 mandated that the minor children attend St. Clement School of Rome,
 
 [3]
 
 and modified the previous award of child custody. The modified visitation schedule reads:
 

 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that on an interim four (4) month basis Mr. Douglas M. Schmidt shall have a straight six (6) day visitation and physical custody of the minor children and Mrs. Irina Dani-lova Schmidt shall have a straight eight (8) day visitation and physical custody of the minor children.
 

 Ms. Schmidt filed a motion for new trial which the district court subsequently denied in its entirety on October 30, 2007.
 
 [4]
 
 Ms. Schmidt appeals the judgments rendered on August 8, 2007 and on October 30, 2007, and specifies five assignments of error:
 

 (1) the district court erred in its failure to grant Ms. Schmidt’s exception of no cause of action “by using the incorrect standard of burden of proof [sic];”
 

 (2) the district court erred by modifying the previous custody award as previously established by a considered decree of May 6, 2004;
 

 (3) the district court erred in failing to grant a new trial as to the right of first refusal and modification of custody;
 

 (4) the district court erred in failing to amend its judgment as to the error of time calculation pursuant to La. C.C.P. art[.] 1951; and
 

 (5) the district court erred in ordering the children to attend St. Clement of Rome School.
 

 | ^DISCUSSION
 

 In her first assignment of error, Ms. Schmidt argues that the district court erred in its failure to grant her exception of no cause of action “by using the incorrect standard of burden of proof [sic].” However, Ms. Schmidt’s first assignment of error concerns only whether the district court erred in denying Ms. Schmidt’s exception of no cause of action.
 

 This Court has re-iterated the legal standard of review for the denial of an exception of no cause of action as follows:
 

 [t]his Court’s standard of review is
 
 de novo.
 
 Thus, no deference is due to the district court’s legal conclusions and this Court uses the same test applicable in the district court. This Court stated in
 
 Wirthman-Tag Constr. Co. v. Hotard,
 
 
 *201
 
 00-2298, 00-2299, p. 5 (La.App. 4th Cir.12/19/01), 804 So.2d 856, 860, the following:
 

 The purpose of the exception of no cause of action is to determine the legal sufficiency of the plaintiffs petition. Generally, the exception is tried on the face of the petition and no evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 927(A)(4), 931;
 
 Reis v. Fenasci Smith,
 
 93-1785 (La.App. 4 Cir. 4/14/94), 635 So.2d 1319, 1321. However, the exception allows the court to consider evidence that is admitted without objection to enlarge the pleadings.
 
 Stephenson v. Nations Credit Financial Services Corp.,
 
 98-1688, 98-1689 (La.App. 1 Cir. 9/24/99), 754 So.2d 1011;
 
 Sivils v. Mitchell,
 
 96-2528 (La.App. 1 Cir. 11/7/97), 704 So.2d 25.
 

 Bizcapital Business & Industrial Development Corp. v. Union Planters Corp.,
 
 2003-2208, p. 3, (La.App. 4 Cir. 9/8/04), 884 So.2d 623, 625. (emphasis ours) Hence, the Court must conduct a
 
 de novo
 
 review as stated in
 
 Bizcapital.
 

 In his
 
 Motion and Order for an Amendment of Custody Judgment and to Send Minor Children to St. Clement of Rome School,
 
 Mr. Schmidt asserts:
 

 J#
 

 On or about May 6, 2004, the Court issued an Ex Propio Motu Amended Judgment ordering that the plaintiff, Douglas Schmidt and the defendant, Iri-na V. Danilova Schmidt share joint custody of the minor children, Douglas, Jr. and Michael.
 

 4.
 

 Said Judgment described above, also named plaintiff, Douglas M. Schmidt and the defendant, Irina V. Danilova Schmidt were named as co-domiciliary parents of the minor children, Douglas, Jr. and Michael.
 

 [[Image here]]
 

 6.
 

 Plaintiff and defendant have abided by the schedule, except when the plaintiff was forced to evacuate New Orleans because of the devastating effects caused by Hurricane Katrina and its aftermath. However, it takes two to have children and for the reasons after mentioned, the custody arrangement should be fifty-fifty-
 

 [[Image here]]
 

 9.
 

 Accordingly, plaintiff respectfully submits that it is in the best interests of the minor children, that the Custody Judgment described above be amended as follows:
 

 10.
 

 Plaintiff proposes that the visitation provision of the Custody Judgment be amended as follows:
 

 That plaintiff and the defendant share visitation on alternate weeks, so plaintiff on the Monday of his visitation would pick up the children at school and drop them off the following Monday morning at school. In other words, each parent would have the children for seven (7) days on a week to week basis.
 

 Jill-
 

 The plaintiff and the defendant live near to each other and both live close to the school where the minor children will attend, so alternating weeks, as is feasible visitation schedule.
 

 
 *202
 
 12.
 

 From the record, the Court can see that there have been numerous Motions for Contempt filed regardirig incidents which occurred when the children were transferred from one parent to another, either at the defendant’s home of [sic] at the minor child’s school.
 

 13.
 

 These incidents unfortunately occur in front of the children causing them undue hardship.
 

 14.
 

 Under this arrangement, the plaintiff and defendant need not see each other because the children are dropped off and/or picked up at the beginning or end of school, respectively.
 

 15.
 

 Each party if concerned, can call the school to insure that the minor children are in attendance, as per the Custody Judgment, this further eliminating any contact between plaintiff and defendant.
 

 $ ⅜ ⅜
 

 17.
 

 Under the present arrangement, the week [the plaintiff] has visitation with them on Wednesday, after school 3:30 pm. [sic] until Friday at 8:30 a.m., leaves him with very little quality time with them.
 

 J3I8.
 

 The lives of the minor children would be more stable because they change households half the time under the current arrangement. Instead of two exchanges per week there would only be one.
 

 Mr. Schmidt argues that the district court was proper in denying Ms. Schmidt’s exception of no cause of action. He asserts that the court should look at the four corners of his motion to determine the relief that he requests. He asserts that it is clear from the motion itself that he sought to amend the visitation provisions of the custody judgment.
 

 As stated by the Supreme Court in
 
 Wright v. Louisiana Power and Light,
 
 2006-1181 (La.3/9/07), 951 So.2d 1058:
 

 A cause of action, when used in the context of the peremptory exception, is defined as the operative facts that give rise to the plaintiffs right to judicially assert the action against the defendant.
 
 Everything on Wheels Subaru, Inc. v. Subaru South, Inc.,
 
 616 So.2d 1234, 1238 (La.1993). The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading.
 
 Id.
 
 at 1235. No evidence may be introduced to support or controvert an exception of no cause of action. La. C.C.P. art. 931. Consequently, the court reviews the petition and accepts well-pleaded allegations of fact as true.
 
 Jackson v. State ex rel. Dept. of Corrections,
 
 00-2882, p. 3 (La.5/15/01), 785 So.2d 803, 806;
 
 Everything on Wheels Subaru,
 
 616 So.2d at 1235. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought.
 
 Montalvo v. Sondes,
 
 93-2813, p. 6 (La.5/23/94), 637 So.2d 127, 131.
 

 Louisiana has chosen a system of fact pleading. La. C.C.P. art. 854 cmt. (a);
 
 Montalvo
 
 at p. 6, 637 So.2d at 131. Therefore, it is not necessary for a plaintiff to plead the theory of his case in the petition.
 
 Kizer v. Lilly,
 
 471 So.2d 716,
 
 *203
 
 719 (La.1985). However, the mere conclusions of the plaintiff unsupported by facts does not |Rset forth a cause of action.
 
 Montalvo
 
 at p. 6, 637 So.2d at 131.
 

 The burden of demonstrating that the petition states no cause of action is upon the mover.
 
 City of New Orleans v. Board of Com’rs of Orleans Levee Dist.,
 
 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. In reviewing the judgment of the district court relating to an exception of no cause of action, appellate courts should conduct a
 
 de novo
 
 review because the exception raises a question of law and the lower court’s decision is based solely on the sufficiency of the petition.
 
 Fink v. Bryant,
 
 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349;
 
 City of New Orleans
 
 at p. 28, 640 So.2d at 253. The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiffs behalf, the petition states any valid cause of action for relief.
 
 City of New Orleans
 
 at p. 29, 640 So.2d at 253.
 

 Id.,
 
 2006-1181, p. 14-15 (La.3/9/07), 951 So.2d 1058, 1068-69,
 
 citing Ramey v. DeCaire,
 
 03-1299 (La.3/19/04), 869 So.2d 114, 118-119.
 

 We point out that while Ms. Schmidt alleges that the district court applied the improper standard to determine the burden of proof (the two-prong
 
 Bergeron
 
 standard for modification of child custody judgment), in granting Mr. Schmidt’s motion, we re-iterate that, “the purpose of the exception of no cause of action is to determine the legal sufficiency of the plaintiffs petition.” Hence, rather than address the issues related to the merits of Mr. Schmidt’s
 
 Motion and Order for an Amendment of Custody Judgment and to Send Minor Children to St. Clement of Rome School
 
 at this juncture, this Court shall reserve discussion of the issues related to the applicability of
 
 Bergeron,
 

 [5]
 

 and discuss same, in Ms. Schmidt’s second assignment of error.
 

 Nevertheless, based upon this Court’s review of Mr. Schmidt’s
 
 Motion and Order for an Amendment of Custody Judgment and to Send Minor Children to St. \ ^Clement of Rome School,
 
 we find that Mr. Schmidt’s motion does state a cause of action. The motion seeks to modify a pri- or custody judgment as it pertains to visitation. Mr. Schmidt, as a parent who shares joint custody of his sons, has a valid cause of action.
 

 Hence, based upon our review of Ms. Schmidt’s motion, we find that the district court did not err in denying Ms. Schmidt’s exception of no cause of action. This first assignment of error does not have merit.
 

 In her second assignment of error, Ms. Schmidt argues that the district court erred by modifying the previous custody award established by the considered decree of May 6, 2004.
 

 “An appellate court may not set aside a trial court’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong.’ ”
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). The trial court’s determination in establishing or modifying custody is entitled to great weight and will not be disturbed by an appellate court absent a clear showing of abuse of discretion.”
 
 Mckenzie v. Cuccia,
 
 2004-0112, p. 3-4 (La.App. 4 Cir. 6/23/04), 879 So.2d 335, 338
 
 citing Thompson v. Thompson,
 
 532 So.2d 101 (La.1988);
 
 Gill v. Dufréne,
 
 97-0777 (La.App. 1 Cir.12/29/97), 706 So.2d 518, 521.
 

 Ms. Schmidt asserts that the case
 
 Ber-geron,
 
 standard, should be the applicable
 
 *204
 
 standard in the instant matter because she asserts that Mr. Schmidt seeks to modify the custody judgment.
 

 The
 
 Bergeron
 
 case concerned the modification of a child custody judgment by the father. While both the district court and the appellate court vacated the mother’s longstanding sole custody award and substituted the joint custody order, thereby giving the father physical custody of the child for a total of nine months of 110each year, our Supreme Court, on writ of certio-rari, held that none of the events proved by the father “constituted [a] change in circumstances warranting consideration of [a] change in custody decree.”
 
 Id.,
 
 492 So.2d at 1203.
 

 In a subsequent Supreme Court case,
 
 AEB v. JBE,
 
 1999-2668 (La.11/30/99), 752 So.2d 756, the
 
 Bergeron
 
 standard is explained in further detail, as follows:
 

 La. Civ.Code art. 131 provides that “[i]n a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child.”
 
 Comment
 
 (d) to article 131 states that the article should be followed in actions to change custody as well as in those to initially set it. Comment (d) further states that the jurisprudential requirements of
 
 Bergeron v. Bergeron,
 
 492 So.2d 1193 (La.1986), are applied to actions to change custody rendered in considered decrees. In such actions, the proponent of change must show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody.
 
 Bergeron,
 
 492 So.2d at 1195. The party seeking a change “bears the heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.”
 
 Bergeron,
 
 492 So.2d at 1200. This burden of proof is imposed as a means of implementing the best interest standard in light of the special considerations present in change of custody cases. Last, the determination of the trial judge in child custody ■ matters is entitled to great weight, and his discretion will not be disturbed on review in the absence of a clear showing of abuse.
 
 Bergeron,
 
 492 So.2d at 1196.
 

 AEB v. JBE,
 
 1999-2668, p. 7 (La.11/30/99), 752 So.2d 756, 760-761.
 

 Ms. Schmidt contends that the arguments made by Mr. Schmidt at the hearing related to visitation and not to custody. She asserts that visitation was not at issue; rather, she interjects that Mr. Schmidt was attempting to pursue a change |nin custody. In further support of her position, Ms. Schmidt cites
 
 Cedotal v. Cedotal,
 
 05-1524 (La.App. 1 Cir. 11/4/05), 927 So.2d 433.
 

 In
 
 Cedotal,
 
 a mother appealed the district court judgment that modified the original consensual custody agreement to a fifty-fifty sharing of physical custody of the children between she and the children’s father.
 
 Id.,
 
 p. 2, 927 So.2d at 434. The First Circuit reversed the district court, finding that the trial court committed legal error.
 
 Id.,
 
 p. 5, 927 So.2d at 436. The First Circuit held:
 

 The time that parents with joint legal custody share with them child is more properly described as a physical custody allocation of a joint custody plan, rather than as visitation. LSA-R.S. 9:335;
 
 Francois v. Leon,
 
 02-0460 (La.App. 3 Cir. 11/27/02), 834 So.2d 1109, 1112. Physical custody is actual custody. As the Louisiana Supreme Court has explained:
 

 
 *205
 
 The term “custody” is usually broken down into two components: physical or “actual” custody and legal custody. The typical joint custody plan will allocate time periods for physical custody between parents so as to promote a sharing of the care and custody of the child in such a way as to ensure the child of frequent and continuing contact with both parents.
 
 Evans v. Lungrin,
 
 97-0541 (La.2/6/98), 708 So.2d 731, 737.
 

 When a custody decree is, as herein, a stipulated or consensual judgment, a party seeking modification of custody must prove that there has been a material change in circumstances (also referred to as a change in circumstances materially affecting the welfare of the child) since the original decree, as well as prove that the proposed modification is in the best interest of the child.
 
 Shaffer v. Shaffer,
 
 00-1251 (La.App. 1 Cir. 9/13/00), 808 So.2d 354, 356-357 n. 2,
 
 writ denied,
 
 00-2838 (La.11/13/00), 774 So.2d 151.
 

 The Louisiana Supreme Court has rightly recognized that unjustified litigation, the threat of litigation, or continued parental conflict can bring about unfavorable emotional consequences for a child.
 
 See Bergeron v. Bergeron,
 
 492 So.2d 1193, 1200 (La.1986). 112This policy is as applicable to attempts to change physical custody as it is to attempts to change legal custody.
 
 Davenport v. Manning,
 
 95-2349 (La.App. 4 Cir. 6/5/96), 675 So.2d 1230, 1232. Therefore, a parent seeking modification of a “physical” custody decree must meet the two-prong test.
 
 See Lee v. Lee,
 
 34,025 (La.App. 2 Cir. 8/25/00), 766 So.2d 723, 726,
 
 writ denied,
 
 00-2680 (La.11/13/00), 774 So.2d 150.
 

 Cedotal,
 
 05-1525, p. 5-6, 927 So.2d at 436. She also cites a plethora of other cases in support of her argument that the district court was incorrect in modifying the custody judgment.
 

 Mr. Schmidt’s
 
 Motion and Order for an Amendment of Custody Judgment and to Send Minor Children to St. Clement of Rome,
 
 as related to the changes requested sets forth:
 

 9.
 

 Accordingly, plaintiff respectfully submits that it is in the best interests of the minor children, that the Custody Judgment described above be amended as follows:
 

 10.
 

 Plaintiff proposes that the visitation provision of the Custody Judgment be amended as follows:
 

 That plaintiff and the defendant share visitation on alternate weeks, so plaintiff on the Monday of his visitation would pick up the children at school and drop them off the following Monday morning at school. In other words, each parent would have the children for seven (7) days on a week to week basis.
 

 11.
 

 The plaintiff and the defendant live near to each other and both live close to the school where the minor children will attend, so alternating weeks, as is feasible visitation schedule.
 

 1
 

 From the record, the Court can see that there have been numerous Motions for Contempt filed regarding incidents which occurred when the children were transferred from one parent to another, either at the defendant’s home of [sic] at the minor child’s school.
 

 
 *206
 
 13.
 

 These incidents unfortunately occur in front of the children causing them undue hardship.
 

 14.
 

 Under this arrangement, the plaintiff and defendant need not see each other because the children are dropped off and/or picked up at the beginning or end of school, respectively.
 

 15.
 

 Each party if concerned, can call the school to insure that the minor children are in attendance, as per the Custody Judgment, this further eliminating any contact between plaintiff and defendant.
 

 [[Image here]]
 

 17.
 

 Under the present arrangement, the week [the plaintiff] has visitation with them on Wednesday, after school 3:30 pm. [sic] until Friday at 8:30 a.m., leaves him with very little quality time with them.
 

 18.
 

 The lives of the minor children would be more stable because they change households half the time under the current arrangement. Instead of two exchanges per week there would only be one.
 

 At the August 8, 2007 hearing, Mr. Schmidt testified about three (3) incidents in which the police had been called during one scheduled visitation |uexchange. On another occasion, Ms. Schmidt’s mother was charged with attacking Mr. Schmidt when he came to Ms. Schmidt’s residence to pick up the children. On yet another occasion, Ms. Schmidt was arrested and charged with attacking Mr. Schmidt at his law office after he dropped the children off. As a result of the attack, Mr. Schmidt testified that he called the Jefferson Parish Sheriffs Office in order to obtain visitation of the children during the Christmas holidays. He also testified that he notified the district court of the incident. Mr. Schmidt also testified that Ms. Schmidt also caused physical harm upon the deputy who responded to the call for assistance.
 

 Since the Court has found that the district court was correct in denying Ms. Schmidt’s exception of no cause of action raised in her first assignment of error, it is clear from Mr. Schmidt’s motion that he is seeking a modification of visitation. Ms. Schmidt’s assertion that Mr. Schmidt seeks to change custody of the children is both misleading and far-reaching.
 

 Ms. Schmidt also argues that it was improper for the district court to consider the visitation discussion contained in the
 
 Family Law Handbook
 
 by Triche. She asserts that the passage below was read in court during the August 8, 2007, conference:
 

 Change a Modification of Visitation
 

 Because visitation has an independent basis from custody, the Bergeron test rule is not applicable to a motion to modify visitation. The “best interests” of the child is the appropriate standard.
 
 Acklin v. Acklin,
 
 690 So.2d 869 (La.App. 2 Cir.1997). See also
 
 White v. Fetzer,
 
 707 So.2d 1377 (La.App. 3 Cir.1998) or the party signed a consent decree concerning custody and [ ,r,visitation in stipulated that any action to change the plan would be subject to the
 
 Bergeron
 
 burden. Subsequently, the father filed a role for increased visitation. The Court held that Bergeron did not apply to a rule for increased visitation the best interest standard applied.
 

 
 *207
 

 Family Law Handbook,
 
 Triche, p. 724. Ms. Schmidt asserts that this passage was improperly read and did not apply to the action for modification of custody.
 

 However, Mr. Schmidt asserts that the passage read at the conference was directly on-point because the passage relates specifically to a modification of visitation. Additionally, Mr. Schmidt relies upon other cases cited by the
 
 Family Law Handbook
 
 which considered whether a parent must demonstrate a change of circumstances as a precondition to a modification of visitation.
 

 In particular, he notes that the
 
 Family Law Handbook
 
 cited
 
 Mosely v. Mosely,
 
 499 So.2d 106 (La.App. 1 Cir.1986), in which the First Circuit held that modifications in visitation “are not so substantial as to require proof of a change of circumstances.” The First Circuit also held that as to modification of visitation, “a showing that the modifications are in the best interest of the children is sufficient. La Civ. Code arts. 146,
 
 [6]
 
 157.
 
 [7]
 
 ”
 
 Id.,
 
 499 So.2d at 109. Clearly, this holding is contrary to what Ms. Schmidt asserts.
 

 Our review of the record establishes that the divorce and custody proceedings in the district court were very contentious between the parties. The Court also notes that with respect to the district court judgment, the district court had a duty to step forward in an effort to resolve the acrimony between the parties. The record also establishes that both parents care very much for their children.
 

 | ^However, as to the instant matter, Mr. Schmidt did not seek to change the co-domiciliary status awarded to both he and Ms. Schmidt; rather, he sought a modification on the basis that the periods in which the children were scheduled to be in his care often became confrontational due to the behavior of Ms. Schmidt and her mother.
 

 Concerning Ms. Schmidt’s mother, Ms. Elena Danilova, in the proceedings below, Mr. Schmidt testified that his mother-in-law has exacerbated the contentious relationship between himself and Ms. Schmidt, and that her presence constitutes a change of circumstances warranting a modification of the prior visitation schedule. In filing his motion, Mr. Schmidt sought to have less confrontational exchanges during the scheduled visitations. Mr. Schmidt testified:
 

 BY MR. HOWARD
 
 [8]
 
 : Why do you believe, sir, that a fifty/fifty arrangement would be appropriate in this case?
 

 MR. SCHMIDT: Well, Your Honor, I want it for the best interest of the children. I have been attacked physically by her mother picking up the children. I have had to get police involved when she said that she was going to kick the policeman’s A-SS....
 

 [[Image here]]
 

 Her mother — I went to get the children one time from the mother and I couldn’t get them. And I was walking
 
 *208
 
 out with the children and the mother jumped on my back and started hitting | ,7me. And I was walking with both children in my arm, they were one and three years old, and I got into the car ...
 

 [[Image here]]
 

 THE COURT: Okay. You have had altercations with the mother, you know, and we really aren’t here to say you know — so I mean that’s a whole other issue, grandmother is, but go ahead.
 

 MR. SCHMIDT: Well, I am just saying that it’s getting into other things as an issue because there is a change of circumstances, the mother moved here and the mother is here and it has picked up in intensity. And that is what I am afraid of, I am afraid of being hurt. And the reasons I say that, if you look at Doctor Howze’s (phonetically spelled) report, she says that if the mother moves here it’s a change of circumstances and she gives all of those reasons, but the fact of the matter is, is I got jumped—
 

 MR. KENNEDY
 
 [9]
 
 : Your Honor, once again, we don’t have a time frame here, first of all. Second of all, her mom has been here since the last time we went to court on this thing, once again in June of 2006. So once again, the changes — I mean I am going to object to the relevancy of it. I think it is more to the—
 

 THE COURT: Listen, I think it is both because I did read a portion of Doctor Howze’s (phonetically spelled) report, and I did read what she Instated as the influence that the mother has. And if the mother is aggravating the situation then it is a change of circumstances and its does cause more conflict.
 

 The record also contains testimony
 
 [10]
 
 from Dr. Beverly Howze in which she testified that her meetings with Ms. Schmidt revealed that Ms. Schmidt speaks extensively to her mother, Ms. Danilova, about the problems between herself and Mr. Schmidt. Dr. Howze testified that it was her belief that Ms. Schmidt’s daily conversations with her mother may complicate matters because Ms. Danilova only hears her daughter’s perceptions of the problems between herself and Mr. Schmidt. Dr. Howze further testified that because Ms. Schmidt confides her complaints and worries to her mother, her mother’s perception of things may result in her offering advice that interferes with the Schmidts’ abilities to resolve their own conflicts.
 

 In a subsequent correspondence to the district court dated July 21, 2004, Dr. Howze expressed her concerns over Ms. Danilova’s visit from Russia. In a letter, she wrote:
 

 I am addressing the problem to the Court because Mrs. Schmidt’s mother has been visiting from Russia and the children have begun showing signs of stress. The initial report by my office stated that her mother’s presence in the home would constitute a change of circumstance. Although my understanding is that Mrs. Schmidt’s mother may merely be visiting, I am not sure as to her length of stay and my concern has to do with the children’s best interests.
 

 Dr. Howze’s testimony and reports to the district court provide independent observations relating to the conflict between Mr. and Ms. Schmidt. Her reports further substantiate Mr. Schmidt’s frustration
 
 *209
 
 in dealing with Ms. Schmidt, and |1flhow the shared custody relationship became exacerbated upon the arrival of Mrs. Danilo-va. Hence, it is apparent from the record that Mr. Schmidt became increasingly concerned about the children’s welfare because of the confrontations that occurred in the presence of the children.
 

 The trial court was in the best position to evaluate the facts in the instant matter. The district court concluded that as a result of the problems Mr. Schmidt encountered with the prior visitation plan, it was necessary to establish a different schedule where the visitation periods would be in the children’s best interest as well as both beneficial and non-disruptive to the children’s school schedules.
 

 The trial court accepted Mr. Schmidt’s argument that the custody and visitation schedule in effect following the original May 2004 consent judgment was problematic and required court intervention to amend and/or modify the May 2004 judgment. In the instant matter, the district court’s judgment regarding the court’s determination of custody “is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown.”
 
 Mims v. Mims,
 
 2002-1681, p. 3 (La.App. 4 Cir. 9/3/03), 856 So.2d 36, 42-43,
 
 citing Mire v. Mire,
 
 1998-1614 (La.App. 4 Cir. 3/24/99), 734 So.2d 751. We find that this assignment of error does not have merit.
 

 In her third assignment of error, Ms. Schmidt asserts that the district court erred in failing to grant a new trial as to the right of first refusal and modification of custody. Particularly, Ms. Schmidt refers to the right of having the first choice in keeping the children overnight herself, rather than having Mr. Schmidt’s extended family keep the children during those times when has to be out of town during his scheduled visitation. At the heart of her argument, Ms. Schmidt asserts 12nthat the district court was ambiguous in its earlier disposition of her right to first refusal.
 

 “The jurisprudence recognizes the trial judge’s great discretion in deciding a motion for new trial and, on appeal, the appellate court is limited to a determination of whether a trial judge abused his ‘much discretion’ in granting or denying a new trial.”
 
 In re New Orleans Train Car Leakage Fire Litigation,
 
 2000-1919, p. 6 (La.App. 4 Cir. 4/20/05), 903 So.2d 9, 15,
 
 citing Zatarain v. WDSU-Television,
 
 95-2600 (La.App. 4 Cir. 4/24/96), 673 So.2d 1181.
 

 “The delay for applying for a new trial shall be seven days, exclusive of legal holidays” and “[t]he delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913.” La.C.C.P. art. 1974. “A motion for a new trial shall set forth the grounds upon which it is based. When the motion is based on Article 1972(2) and (3), the allegations of fact therein shall be verified by the affidavit of the applicant.” La. C.C.P. art. 1975. Furthermore,
 

 A new trial shall be granted, upon contradictory motion of any party, in the following cases:
 

 1. When the verdict or judgment appears clearly contrary to the law and the evidence.
 

 2. When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
 

 3. When the jury was bribed or has behaved improperly so that
 
 *210
 
 impartial justice has not been done.
 

 La. C.C.P. art. 1972.
 

 |2iA new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only. If a new trial is granted as to less than all parties or issues, the judgment may be held in abeyance as to all parties and issues. La. C.C.P. art. 1971. However, “a motion for new trial may be summarily denied in the absence of a clear showing in the motion of facts or law reasonably calculated to change the outcome or reasonably believed to have denied the applicant a fair trial.”
 
 Williamson v. Haynes Best Western of Alexandria, Inc.,
 
 2002-1076, p. 4 (La.App. 4 Cir. 1/21/04), 865 So.2d 224, 227;
 
 rehearing denied
 
 (2/27/04);
 
 writ denied,
 
 2004-0784, 872 So.2d 1089 (La.5/7/04).
 

 In the instant matter, the following colloquy represents the district court’s discussion regarding Ms. Schmidt’s right of first refusal:
 

 MR. KENNEDY: Your honor, my client has filed a motion for — an order for right of first refusal. It was filed back in February of '07, in connection with if one parent doesn’t have the ability to take care of the children, being out of town, et cetera, that—
 

 MR. HOWARD: In theory, we are agreeing to that. When does it start? Does it start if they are going to be out-of-town for twenty minutes, does it start if they are going to be out of town for two days, one day, twelve hours, tell me. I mean because if you are just running to the store or if you’re going to be gone—
 

 [[Image here]]
 

 MR. KENNEDY: Your honor, my client had requested that if it is going to be for a period of more than say | ¿¿four hours, for example, if they were going to be in a trial. And once again, we are not talking about school time and things of that nature.... So, if there was going to be a four hour period, for example, a night that Mr. Schmidt or Mrs. [sic] Schmidt wanted to go out entertaining, party, et cet-era, rather than having a third party take care of the children that they be given at lease an opportunity.
 

 [[Image here]]
 

 MR. HOWARD: What I propose, your honor is like any right of first refusals, any time that there is going to be an overnight — when the party is going to be gone overnight that the mother has a right of first refusal, okay, or the daddy, if it is going to be overnight, that way we won’t have a big fight every time we turn around about well, you were gone three hours and twenty minutes because that is the nature of this case, Your Honor. So I understand her concerns and I understand his concerns, but if there is going to be an overnight involved then he ought to call her and say he would you like to have the kids because I’m going to be gone.
 

 THE COURT: Mr. Kennedy.
 

 MR. KENNEDY: Your honor, once again we would re-urge if it is that period of time, rather than having somebody else take care of the children that my client is once again re-urging if they are going to be in excess of four hours—
 

 | ¿¿THE COURT: You know, Mr. Kennedy, I mean if we had a couple that seemed like they could really work this thing out, we wouldn’t be here. And like I said, with the number of
 
 *211
 
 pleadings and motions that we have and things on contempt and, you know, this alleging that, I mean that means they have to meet to drop the kids off. They have to meet to drop the kids off. He had to then come back to the house and pick-up the children and then we have got two opportunities to have another conflict because it is a high conflict custody case. And so my thing is is that as much as possible as they can avoid each other. So that to me — that to me is really unreasonable. Now I definitely think rather than have them stay with a babysitter they should be with them mom or they should be with their dad if the mother is leaving the country or I mean going to New York, you know, or something like that— whatever she is doing. And so I mean I just can’t see four hours ... And that argument is not strong Mr. Kennedy. I don’t hear any — for what reason, just because she should have them?
 

 MR. KENNEDY: Well, Your Honor, once again I think the law does state that, but of course it is always good that time spent with the parents is better than spent with third parties. I think everybody will agree with that.
 

 THE COURT: Four hours is not reasonable. 1 ^Overnight she has the right of first refusal.
 

 MR. HOWARD: And vice versa?
 

 THE COURT: Correct, I mean if she is going to be — I doubt that, but it certainly should be.
 

 Our review of the record indicates that the district court sought to remedy the issue of Ms. Schmidt’s light of first refusal with respect to her concern stemming from the problem of Mr. Schmidt’s extended family having to care for the minor children overnight. The district court was clear in its intent to extend the right of first refusal to both parties. The district court clearly acknowledged that although Ms. Schmidt may not travel out of town as much as Mr. Schmidt, the right of first refusal was awarded to the parties equally.
 

 Given that our review of the record establishes that the district heard arguments from both parties, particularly Ms. Schmidt, with respect to the right of first refusal, and further considering that “a motion for new trial may be summarily denied in the absence of a clear showing in the motion of facts or law reasonably calculated to change the outcome or reasonably believed to have denied the applicant a fair trial,”
 
 Williamson,
 
 p. 4, 865 So.2d at 227, it is clear that the district court did not abuse its discretion in denying Ms. Schmidt’s motion for new trial as to the right of first refusal. This assignment of error does not have merit.
 

 In her fourth assignment of error, Ms. Schmidt argues that the district court erred in failing to amend its judgment as to the error of time calculation pursuant to La. C.C.P. art. 1951.
 

 Louisiana Code of Civil Procedure art. 1951, titled
 
 Amendment of judgment,
 
 provides that “[a] final judgment may be amended by the trial court at any time, _Jj5with or without notice, on its own motion or on motion of any party: (1) To alter the phraseology of the judgment, but not the substance; or (2) To correct errors of calculation.”
 

 Ms. Schmidt argues that the district court erred in proceeding to grant Mr. Schmidt six (6) consecutive days of visitation and give Ms. Schmidt eight (8) consecutive days. She asserts that the district court’s visitation allocation contains a mathematical miscalculation. Ms. Schmidt asserts that in the transcript of the consent judgment on June 15, 2006, she was
 
 *212
 
 actually granted the following physical custody of the minor children:
 

 WEEK # 1
 

 Wednesday from 3 p.m. - midnight 8 hours, 30 min.
 

 Thursday all day 24 hours
 

 Friday until 8:30 a.m. 8 hours, 30 min.
 

 TOTAL FOR WEEK # 1: WEEK # 2 41 HOURS
 

 Thursday from 3:30 p.m. - midnight 8 hours, 30 min.
 

 Friday, all day 24 hours
 

 Saturday, all day 24 hours
 

 Sunday, all day 24 hours
 

 Monday until 8:30 a.m. 8 hours, 30 min.
 

 TOTAL FOR WEEK # 2: 89 HOURS
 

 Based on Ms. Schmidt’s calculation, the total physical custody that she was awarded by the district court for the two week period was 130 hours, or rather five (5) _|22days and ten (10) hours. However, she asserts that the increase from five (5) days and ten (10) hours, to six (6) days effectively diminishes her physical custody of the children by approximately 14 hours every two weeks. As a result, she asserts that she will lose approximately three (3) weeks per year with her children. Additionally, she asserts that the
 
 Bergeron
 
 standard should have been applied regarding the modification of custody, but Mr. Schmidt failed to meet that burden. As a result she contends that the considered decree of May 6, 2004 should be reinstated.
 

 Mr. Schmidt argues that the district court’s calculation of time was not in error. In fact, he acknowledges that Ms. Schmidt actually has more time than he does with respect to her actual physical custody of the children. He insists that her argument that the loss of 14 hours every two weeks, approximately 21 days per year, is without merit because her calculation is in error. He maintains that the actual calculation results in 15.16 days less for Ms. Schmidt, and not 21 days. He points out that 15 days is actually only 4% of the total year. In support of this point, he notes that even the district court acknowledged that the allocation of time did not represent a change that was “significant enough” to grant a new trial regarding its decision to modify the visitation schedule— which awarded six (6) consecutive days to Mr. Schmidt and eight (8) consecutive days to Ms. Schmidt.
 

 In
 
 Fernandez v. Pizzalato,
 
 2004-1676, pp. 13-14 (La.App. 4 Cir. 4/27/05), 902 So.2d 1112, 1121, this Court reviewed the standard of review for child custody stating that “[i]n
 
 Bergeron v. Bergeron,
 
 492 So.2d 1193 (La.1986), the Louisiana Supreme Court described the appellate review standard by stating that ‘upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight, and his discretion will not be disturbed on review in the | g7absence of a clear showing of abuse.’ ”
 
 Id.
 
 at 1196.
 
 See also AEB v. JBE,
 
 99-2668, p. 7, 752 So.2d at 761.
 

 Specifically regarding the time allocation in joint custody awards, the Third Circuit, in
 
 Saucier v. Saucier,
 
 1998-659, p. 10 (La.App. 3 Cir. 10/7/98), 719 So.2d 702, 707, held:
 

 [i]n a joint custody decree and implementation order, “[t]o the extent feasible and in the best interest of the child, physical custody of the children should be shared equally.” La.R.S. 9:335(A)(2)(b). This provision does not mandate fifty-fifty sharing of actual physical custody. Of paramount importance is the best interest of the children, taking into consideration the ages of the children, the parental situation, and other factors relevant to the issue of child custody.
 
 Brown v. Brown,
 
 96-743 (La.App. 3 Cir. 2/26/97); 692 So.2d 458. Each case must be decided on its unique circumstances with reference to the best interest of the children.
 

 
 *213
 
 When the issue of shared custody was brought up in open court by Ms. Schmidt, the district court was clear in its intention to not recalculate the visitation schedule in either party’s favor. The court did acknowledge that Mr. Schmidt would have additional hours of visitation, but the district court pointed out that Ms. Schmidt would not be prejudiced by the change in visitation and that actual custody would not be affected. At the hearing, the district court indicated:
 

 THE COURT: The court did not calculate anything, the court said that instead of having five hours and%’s, or 5 days and ¾ hours, or however the complicated visitation schedule was. Instead of having all of that, we are going to have eight days with the mother and six days with the father. That is it. If that turned out that those few minutes that were added to this father’s time to be 31 more days during the year, and it does not affect the 50/50, it doesn’t affect the child support, which was never the intent of the court.
 

 |2ROur review of the record indicates that the district court was clear in its intention to create a less complicated schedule. In addition, the district court explained its rationale behind the modification. There was no change in custody ordered, merely a tweaking of the order so that the time periods would flow smoother. There is no indication that the district court abused its discretion; thus we find that Ms. Schmidt’s fourth assignment of error is without merit.
 

 In her fifth and final assignment of error, Ms. Schmidt argues that the district court erred in ordering the children to attend St. Clement of Rome School.
 

 The Consent Agreement was read in open court on June 15, 2006. It concerned a number of matters related to the care and custody of the two minor children. Specifically, as the Consent Agreement relates to the children’s attendance at St. Clement of Rome School, the following colloquy appears in the record:
 

 MR. KENNEDY: ... This is a consent judgment entered into by and between the parties.
 

 The first issue is in connection with school. For the school year 2006— 2007, Dougy — and I’m going to use it for the familiarity, your Honor, for the record but then I’ll go ahead and formalize it more and the judgment to be submitted to the Court. (Mr. Schmidt confers with Mr. Kennedy)
 

 MR. KENNEDY: Your Honor, if I can have one second, we’re having a mutual addition, which I am fine with.
 

 THE COURT: Yes.
 

 (OFF THE RECORD)
 

 | ?C|MR. KENNEDY: Okay, your Honor, let me try again. I tell you what, we’ll come over here just to make it better for everybody. If we could, let’s start again.
 

 First of all, both of the children, Dougy and Mikey will be going to school at St. Martin’s when he’s five years old. I believe he just turned four.
 

 MR. SCHMIDT: Both of the children will attend Catholic catechism, first communion and confirmation as Catholics.
 

 Mr. Schmidt agrees to pay for the children to attend St. Martin’s with the following caveat: that for the school year 2006-2007, Irina Schmidt will contribute or pay $100.00 year.
 

 In his
 
 Motion and Order for an Amendment of Custody Judgment and to Send Minor Children to St. demerit of Rome School,
 
 Mr. Schmidt requested that the
 
 *214
 
 district court issue an order to enforce a consent judgment that was agreed to by-Ms. Schmidt. His motion sets forth that in relation the Consent Agreement:
 

 32.
 

 During that [June 15, 2006] hearing, the defendant agreed that the minor children will attend “Catholic catechism, first communion, and confirmation as Catholics!.]”
 

 33.
 

 Despite the defendant’s agreement, she has refused to allow the minor child, Douglas, Jr. to attend catechism class, a necessary requirement for him to make his first communion which is an important event in the Catholic religion. Her failure to timely abide by the agreement, has put the minor child, Douglas, Jr. far behind other children in order to receive his First Communion.
 

 34.
 

 The minor child, Michael is also coming of the age, that it is necessary that he start receiving instruction |Min the Catholic faith so he can make his First Communion in a timely fashion.
 

 35.
 

 As a result, plaintiff requests that the minor children attend St. Clement of Rome School located in Metairie, Louisiana, because not only is it a first rate elementary school and one of the best in the State it is also a Catholic School, and can provide them with the religious instruction they need in the Catholic faith.
 

 [[Image here]]
 

 37.
 

 It should be noted that the defendant, prior to the June 15, 2006 hearing the defendant [Ms. Schmidt] filed, a[m]otion requesting that Douglas, Jr. be enrolled at St. Clement of Rome. In that [m]otion, she praised St. Clement of Rome’s academic reputation and also stated that it was convenient for the children to attend since it was in her neighborhood.
 

 Our review of the record establishes that as to the issuance of the Consent Agreement, there was a clear meeting of the minds between the parties. The June 15, 2006 Consent Agreement was also dictated into the record by Ms. Schmidt’s counsel of record and specifies that the children were to attend St. Martin’s Episcopal school; however, considering that St. Martin’s does not provide Catholic instruction, it is clear that St. Martin’s would not satisfy the stipulation contained within the Consent Agreement.
 

 No objections appear in the record which would support Ms. Schmidt’s argument that the district court erred in issuing the order directing that the children attend St. Clement of Rome for Catholic instruction. The following colloquy from the hearing on August 8, 2007, illustrates how the district court dealt with the issue of the children’s Catholic schooling:
 

 J^MR. KENNEDY: First of all, do you have an objection to the children attending St. Clement of Rome?
 

 MS. SCHMIDT: Yes, sir, I do.
 

 MR. KENNEDY: And what is that?
 

 MS. SCHMIDT: Well, because we were talking about me agreeing to the children to be raised Catholic was also agreeing for the children to be going to St. Martin’s Episcopal School. It was actually a part of the agreement. Yes, I agreed for Michael to be baptized, but he said if you agree to that, we will send him to the Episcopal School.
 

 
 *215
 
 [[Image here]]
 

 THE COURT: Is it in the judgment that he can go the Episcopal School if you—
 

 MR. HOWARD: No.
 

 THE COURT: — allowed him to baptized?
 

 MS. SCHMIDT: It is not in the judgment, but that was our agreement.
 

 THE COURT: The judgment rules doesn’t it? The judgment rules. Let’s move on.
 

 Again, we note that no objections appear in the record related to the minor children’s Catholic instruction and schooling. However, Ms. Schmidt did respond to Mr. Schmidt’s
 
 Motion and Order for an Amendment of Custody Judgment and to Send Minor Children to St. Clement of Rome School
 
 by filing her exception of no cause of action as to the entire motion.
 

 Nevertheless, the district court continuously acknowledged the acrimony between Mr. and Ms. Schmidt with respect to the Catholic instruction of the children. The district court also questioned Ms. Schmidt about whether the prior ^judgment was clear and explicit as to the children’s Catholic instruction. However, despite acknowledging the content of the earlier judgment, Ms. Schmidt finally agreed that the judgment was the law. The district court went on to orally state its judgment as follows:
 

 THE COURT: The reasons that I am going to change where he is going to go to school, the two children going to school, is because there are no provisions at St. Martin’s for Catholics. Your own witness said that. There are no provisions. And at St. Clement, a school that you were in favor of at one time, has daily instructions. Not only do I believe that, it is testimony by Mr. Schmidt that all of his children went to Catholic schools through the grade years. He is not treating these children any different than he is treating his other four children.
 

 Our review of the record indicates that in relation to the children’s schooling, Mr. Schmidt did not request extra-ordinary relief; rather, he sought to obtain an order directing that the earlier Consent Agreement concerning the children’s Catholic instruction and schooling be enforced. We find that the district court did not err in rendering its order to enforce the Catholic instruction and schooling provisions contained in the June 15, 2006 Consent Agreement. This assignment of error has no merit.
 

 DECREE
 

 For the reasons assigned above, the judgment of the district court is affirmed in all respects.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Ex proprio motu
 
 is a latin legal phrase, meaning "of one’s own accord.”
 

 [2]
 

 . This judgment was rendered on October 30, 2007.
 

 [3]
 

 . This judgment was signed on September 17, 2007.
 

 [4]
 

 .This judgment was signed on November 6, 2007.
 

 [5]
 

 .
 
 Bergeron v. Bergeron,
 
 492 So.2d 1193 (La. 1986).
 

 [6]
 

 . Former C.C. art. 146, relating to custody of children pending litigation, was redesignated as Louisiana Civil Code article 131 pursuant to Acts 1990, No. 1008, § 8 and Acts 1990, No. 1009, § 10.
 

 [7]
 

 . Former C.C. art. 157, relating to custody of children, was redesignated as Louisiana Civil Code article 134 pursuant to Acts 1990, No. 1008, § 8 and Acts 1990, No. 1009, § 10. Following the 1993 revision by Acts 1993, No. 261. See Louisiana Civil Code article 131 et seq. for provisions relating to custody of children.
 

 [8]
 

 .Mr. Howard is counsel for Mr. Schmidt.
 

 [9]
 

 . Mr. Kennedy is counsel for Ms. Schmidt.
 

 [10]
 

 . Dr. Howze’s testimony is from a deposition dated February 4, 2004.