# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-1364


**CRYSTAL SENGER COTHERN**

**VERSUS**

**CHRISTOPHER SCOTT COTHERN**


\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF CONCORDIA, NO. 38,563,
HONORABLE LEO BOOTHE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

## MICHAEL G. SULLIVAN
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Michael G. Sullivan, Billy Howard Ezell, and James T. Genovese, Judges.


## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Lauri G. Boyd
Sturgeon & Boyd
Post Office Drawer 1463
Ferriday, Louisiana  71334
(318) 757-4151
Counsel for Plaintiff/Appellant:
    Crystal Senger Cothern

Brent S. Gore
Attorney at Law
111 Serio Blvd.
Ferriday, Louisiana  71334
(318) 757-4545
Counsel for Defendant/Appellee:
    Christopher Scott Cothern

SULLIVAN, Judge.

In this child custody dispute, the mother appeals a judgment that (1) names the father as the children's domiciliary parent, (2) changes the physical custody schedule from alternating weeks at each parent's home to the first and third weekends of the month, specified holidays, and one-half of the summer for the mother, and (3) terminates the father's child support obligation and orders the mother to pay child support at the minimum amount set by the guidelines. Finding that the trial court judgment does not provide the children with frequent and continuing contact with the nondomiciliary parent under the particular facts of this case, we affirm in part, reverse in part, and remand, as more fully explained below.

### Discussion of the Record

Christopher Scott Cothern and Crystal Senger Cothern were married from October 14, 1994 until their divorce on June 23, 2003. Two children were born of the marriage: Victoria, born on May 23, 1995, and Tyler, born on July 2, 1997. On May 12, 2003, the parties filed a stipulated judgment in which they agreed that Crystal would be the domiciliary parent, with Christopher enjoying physical custody on alternating weekends, plus two days a week, and specified holidays. Christopher also agreed to pay child support of $686.00 per month. The parties reached additional stipulations on November 24, 2003, in which they agreed that each parent would have physical custody of the children every other week and that Christopher's child support obligation would be reduced to $375.00 as of January 2004. Those stipulations were filed into the court record on June 16, 2004.

On January 26, 2005, Crystal filed a rule seeking modification of the physical custody schedule and an increase in child support, alleging that every other week was not working out and that one of the children was struggling in school. The trial court

set that rule for hearing on April 26, 2005, but before that date, on March 8, 2005, Crystal voluntarily checked herself into a drug rehabilitation facility for thirty days to overcome an addiction to prescription medications that she had begun taking after an automobile accident in November of 2002.[1]  While Crystal was still in the treatment facility, on March 21, 2005, Christopher filed a rule alleging a material change in circumstances due to Crystal's addiction and entering the treatment program.  In that rule, he prayed for joint custody with him as the domiciliary parent and with Crystal having the children on alternating weekends.  He also requested that Crystal be ordered to "pay child support based on the guidelines."  By agreement, the April 26, 2005 hearing of Crystal's rule was continued, and the trial court set the hearing of both Crystal's and Christopher's rules for May 26, 2005.

On April 7, 2005, Christopher obtained an ex parte order granting him temporary sole custody of the children until the May 26, 2005 hearing, based primarily upon two incidents involving Crystal's parents that occurred while Crystal was still in the treatment program:  Christopher alleged that Crystal's mother caused a public disturbance at a ballpark in front of the children and that the younger child, Tyler, accidentally shot himself in the big toe while being watched by Crystal's stepfather.  Although this order was styled "ex parte," Crystal's opposition to it was filed into the record before it was signed by the trial court.

At the hearing on May 26, 2005, Crystal testified that she received a certificate of completion from the drug treatment program; that she is participating in follow-up

---

[1]Crystal was involved in another automobile accident the day before she checked in to the drug treatment facility.  She testified that she was not under the influence of drugs when the accident occurred, that she had a "blow out" in the rain, and that the children were not with her. Christopher's mother, Adella Cothern, testified that she "begged" Crystal not to drive about an hour and a half before that accident, when Crystal seemed upset because Tyler did not want to go home with her the previous night.

care, which can involve three to five meetings a week for up to two years; that she recently underwent a negative drug test; and that she is willing to undergo drug testing in the future. She explained that she is currently living in Fayette, Mississippi, which is about twenty-five minutes from Vidalia, Louisiana, where the children are in school and where Christopher lives, but that she and her fiancé, James Thomas, have arranged to rent a four-bedroom home in Vidalia after their upcoming wedding on July 9, 2005.

Crystal also testified that she no longer needs to work due to her planned marriage and that she would like the children to be with her after school when she has physical custody of them. (The children had been staying with Christopher's mother after school, regardless of whose custody week it was, until that parent picked them up after work.) Crystal acknowledged that she is now living full-time with her fiancé, James, but she stated that it was Christopher who insisted that James be present in her home when she kept the children after getting out of the treatment center. She stated that Christopher has only allowed her to see the children on weekends since she has been released, even when he has had to pry them away "kicking, screaming, [and] crying." She pointed out one incident in which the older child, Victoria, became so upset when Christopher refused to let her go home with Crystal that the child's nose started to bleed.

Crystal's fiancé, James, testified that he is a self-employed contractor and that he supports Crystal's decision not to work when they are married. He testified that he gets along "great" with Crystal's children and that he attends all of their sporting events, unless he is coaching his own son, who stays with him every other week. (Crystal testified that all three of the children would have their own room in the house

3

she and James planned to rent after their marriage.) James testified that he believed Christopher and Crystal were equally good parents.

Christopher testified that he would like to be named the domiciliary parent so that the children will be "taken care of during school." Christopher explained that he works in Natchez, Mississippi, but that he can easily take off from work if the children need him at school. He stated that after Crystal entered the treatment program, the children were not getting their homework done and that Tyler was having problems in school. He also stated that before Crystal went into rehabilitation, Tyler was uncontrollable and having fits, but that the child is much better now. Concerning the incident when Victoria's nose started to bleed, Christopher explained that he did not allow her to go with Crystal because she had not yet done her homework that night. Christopher was also concerned that Crystal's parents did not inform him of Tyler's shooting accident until after the child had already been treated at the emergency room.

Christopher testified that he did not approve of Crystal and James living together, but that after Crystal was released from the treatment center, he accepted it because James was "the stable one around, the sensible one." He believed that Crystal treated the children "harshly" by screaming at them and threatening to call him if they were bad, and he was concerned that Crystal might start abusing prescription drugs again.

Christopher's mother, Adella Cothern, testified that she has always cared for the children after school, both during their parents' marriage and when they shared custody after the divorce, regardless of whose week it was. According to Mrs. Cothern, both Christopher and Crystal equally took care of the children when

4

they were married.  Christopher and Crystal each called various friends and relatives as witnesses, establishing that they are both very much involved in the children's school and athletic activities.

At the close of the evidence, the trial court stated that the existing custody order would remain in effect until it reached a decision.  On August 11, 2005, the trial court issued written reasons for judgment, finding that it was in the best interest of the minor children that Christopher be designated as the primary custodial parent, with Crystal to have visitation every first and third weekend of the month, every Mother's Day, alternating holidays, and half of the summer.  The trial court also ordered that Christopher's child support obligation be terminated and that Crystal pay child support "at the statutory minimum . . . until such time as she is able to become gainfully employed."[2]

## Opinion

In her first two assignments of error, Crystal argues that the trial court erred in finding that Christopher proved a material change in circumstances and that it is in the best interest of the children that custody, visitation, and child support be changed. In her third assignment of error, she argues that the trial court erred in granting any relief prayed for in the ex parte order, contending that the order was null and void for noncompliance with statutory requirements.

*Custody*

Because the two prior custody decrees were stipulated judgments, Christopher, as the party seeking to modify the existing custody arrangement, had to prove that a

---

[2]The trial court judgment also ordered that Crystal reimburse Christopher $65.00 per month for dental insurance and $18.00 per month for medical insurance for the children and that each parent claim one child for IRS dependency.  These provisions of the judgment have not been appealed.

material change in circumstances occurred since the latest decree and that his proposed modification of the custody arrangement would be in the best interest of the children. *Evans v. Lungrin*, 97-541, 97-577 (La. 2/6/98), 708 So.2d 731. A trial court's determination regarding child custody is entitled to great weight and can only be disturbed on appeal if the determination is a clear abuse of discretion. *Arrington v. Campbell*, 04-1649 (La.App. 3 Cir. 3/9/05), 898 So.2d 611.

On appeal, Crystal argues that, because she is now drug-free, the trial court judgment inappropriately punishes her for past conduct without proof of a continuing detrimental effect on the children. She points out that she never used "street drugs," that several of her close friends testified that they were unaware of her addiction until she checked into the treatment center, and that she "took the high road" by responsibly addressing the problem even though her custody rule was pending in court. She further contends that the trial court judgment denies her frequent and continuing contact with the children because it does not take into account her upcoming move to Vidalia, where the children are in school, and her ability to spend more time with them because she no longer has to work.

"In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child." La.Civ.Code art. 131. Louisiana Civil Code Article 134 directs the trial court to consider all relevant factors in determining the best interest of the child, then it lists twelve nonexclusive factors that the trial court may consider. In the present case, the trial court considered those factors and made several findings, including that both parents have the capacity and disposition to give the children love, affection, and spiritual guidance; that the children have enjoyed a home, school, and community environment in Vidalia; and

6

that both parents had exercised responsibility for the care and rearing of the children until March of 2005, when Crystal was admitted to the drug treatment facility. However, the trial court questioned both Crystal's moral fitness, due to her addiction and need for rehabilitation, and her ability to provide food, clothing, and medical care for the children because she is no longer employed. The trial court also noted that Crystal lives in Fayette, which is twenty-five miles away from where the children are in school.

After reviewing the record, we find no error in the trial court's decision to maintain joint custody with Christopher as the domiciliary parent. The record reflects that Crystal became addicted to prescription medications and underwent a thirty-day inpatient treatment program during which time she could have no contact with the children. Yet, she failed to give Christopher advance notice of her admission to the program so that arrangements could be made for the children's care. Although Crystal proved that she was drug-free at the time of trial and stated that she was willing to undergo future drug testing, she testified that she had taken only one drug test since her release. She further described a demanding schedule of follow-up care that involves three to five meetings a week for up to two years. On this record, we find that Christopher has demonstrated that Crystal's addiction and her ongoing treatment constitute a material change in circumstances and that it is in the best interest of the children that he be named the domiciliary parent.

Louisiana Revised Statutes 9:335(A)(2)(a) provides that a joint custody implementation order "shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents."

As the court explained in *O'Brien v. O'Brien*, 30,001, pp. 6-7 (La.App. 2 Cir. 12/10/97), 704 So.2d 933, 936 (citations omitted):

> "When the court finds that a decree of joint custody is in the best interest of the child, it does not necessarily require an equal sharing of physical custody." Substantial time, rather than strict equality of time, is mandated by the legislative scheme providing for joint custody of children. Every child custody case must be viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child. Each case will depend on the child's age, the parents' situations, and other factors relevant to a particular child custody dispute.

In the present case, the record reveals, and the trial court found, that both parents had been equally responsible for the care of the children until Crystal entered the drug treatment program in March of 2005. The testimony of family and friends established that, while they were married, both Christopher and Crystal took care of the children's daily needs and participated in many school and sporting events, including serving as coaches for the children's athletic teams. Following their divorce, they initially agreed that Crystal would be the domiciliary parent, with Christopher having the children on alternating weekends, two days during the week, and on specified holidays. At trial, Christopher testified that this arrangement "was just taking [the children] from me too much" so they were able to agree on an alternating weekly schedule, which was in effect when Crystal checked into the rehabilitation program. In addition to Crystal's history as an equal caretaker, there are other factors that support Crystal's maintaining substantial contact with the children, including her planned move to Vidalia, which would eliminate the twenty-five minutes of travel each way on visits; her ability to spend more time with the children because she no longer has to work; and the positive influence of James, who is well-liked by those on both sides of this controversy. Detracting from Crystal's

8

time with the children, however, is her schedule of continuing treatment, which requires her to attend meetings in Natchez at least three nights a week.

Given the amount of time that Crystal must spend on her continuing treatment, most of which is in the evenings when the children would be at home, we find that the trial court did not err in concluding that shared custody is not in the best interest of the children. However, by not giving Crystal any time with the children on week days and nights, the custody schedule devised by the trial court effectively removes Crystal from their school life, in which she has played a role for all but the last year. Under the particular facts of this case, where both parents have traditionally shared the rearing of the children and where Crystal's proposed living arrangements and employment status would facilitate additional contact with the children, we find that the trial court judgment does not comply with the intent of the statute requiring "frequent and continuing contact with both parents." Accordingly, we find that it is in the best interest of the children to allow Crystal one overnight visit each week that does not conflict with her treatment schedule, in addition to the periods of custody allowed in the trial court judgment, provided that she has in fact relocated to Vidalia and that she has remained drug-free. Because the record is unclear as to the exact nights of Crystal's follow-up care and considering that almost one year has elapsed since trial of this matter, we find that we are unable to order the specific modifications that would achieve this goal. Accordingly, we will remand the case with instructions that the trial court conduct a hearing within sixty days of this opinion becoming final to formulate a custody plan consistent with this opinion. *See O'Brien*, 704 So.2d 933.

9

*Child Support*

Crystal next argues that the award of child support should be reversed because Christopher has failed to show a material change in the financial circumstances of the parties. However, Christopher has shown a material change in circumstances that warrants him being named as the domiciliary parent without a "shared" custody arrangement. Under these circumstances, we find that Christopher is entitled to an award of child support. As Christopher has not appealed the trial court's fixing of that award at the statutory minimum, we find that a remand for additional financial information is unnecessary.

*Ex Parte Order*

Crystal next argues that the trial court erred in hearing evidence in support of any prayer set forth in the ex parte order because that order did not conform to the requirements of La.Code Civ.P. art. 3945. Specifically, Crystal contends that the petition for the order did not contain allegations of irreparable injury or a certificate of notice to the other party and that the order had expired by the time of trial, which took place more than fifteen days after it was signed.

In his rule filed on March 21, 2005, Christopher requested that he be named the domiciliary parent, that Crystal be awarded custody on alternating weekends, and that Crystal pay child support in accordance with the guidelines; this is essentially the relief awarded by the trial court after the hearing. Thus, the evidence presented at trial pertained to the prayer for relief in this rule, rather than in the ex parte order. Even if the trial court erred by referring to the ex parte order as the "existing order" in ruling that it remain in effect pending judgment, we find that we are unable to fashion any remedy to cure this defect. We further find any statutory irregularities

10

to be harmless, in that the record establishes that Crystal did receive notice of the petition before the trial court signed the order and irreparable injury can be inferred from the allegations that the mother was enrolled in a treatment facility and that one of the children accidentally shot himself while in the maternal grandfather's care.

## Decree

For the above reasons, we reverse that part of the trial court judgment that denies Crystal overnight contact with the children during the school week, and we remand the case with instructions that the trial court conduct a hearing within sixty days of this opinion becoming final to formulate a custody plan that allows Crystal one overnight visit each week that does not conflict with her treatment schedule, in addition to the other periods of physical custody specified in the judgment, provided that she has relocated to Vidalia and has remained drug-free. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed 30% to Christopher and 70% to Crystal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**