JOY COSSICH LOBRANO, Judge.
In this domestic case, Ronda Lane Bonnette (“Mother”), appeals the December 11, 2014 amended judgment of the .district, court changing the. designation of domiciliary parent from herself to Michael Paul Bonnette (“Father”), and changing the principal residence of the parties’ minor child (“Child”), from Mother’s home in New Orleans to Father’s home in the Houston area after a two-day trial in January 2014. Mother also appeals the denial of her motion to continue made at trial of the matter, as well as the January 6, 2015 judgment of the district court denying a hearing on her Motion for New Trial. For *324 the reasons which follow, we find that the judgments should be affirmed.
The record and evidence reveal the following:
The parties were married in 2006 while living in New Orleans, and one child was born of the marriage in 2009. Around April 2010, Father received a job promotion that required him to relocate to the Houston area. The parties initially-planned to move to the Houston area together following the sale of their home in New Orleans, and Father's company agreed to permit Father to remain in New Orleans 'until' the family home was sold, commuting between New Orleans and Houston, and traveling out of town on sales calls every other week. However, on April 14, 2011, before the family had relocated to Texas, Mother filed for divorce.[1] In response,' on June 13, 2011, Father filed a Reconventional Demand. Both parties requested that they be granted joint custody of Child and each requested to be designated as domiciliary parent or primary custodial parent. Father also sought permission to relocate Child’s principal residence to the Houston area.
The district court scheduled’ a hearing on custody, child support, interim spousal support, and visitation which was held on June 30, 2011. At this time, the parties agreed, inter alia, to a stipulated custody decree, and the court signed a judgment entitled “Interim Consent Judgment” on July 1-8, 2011. Mother and Father were awarded joint custody of Child with Mother designated as the domiciliary parent. Father’s Visitation of Child was set forth as follows: (1) alternate weekends with visitation one weekend per month, in Louisiana and visitation one weekend per month in the Houston area; and (2) from July 1, 2011 to July 10, 2011, visitation at Father’s sister’s house in Missouri.
On October 17, 2012, a final judgement of divorce was entered.' In the period leading up to the finalization of the divorce, the parties’ relationship and communication had deteriorated. On October 30, 2012, the parties consented to mutual civil injunctions as follows: the parties were prohibited from having contact with each other except for matters concerning the health,- safety, and welfare of Child; the parties were prohibited from going near each other’s places of employment or residences; and Mother dismissed with prejudice a previously filed petition for protection from abuse.[2]
On November 25, 2013, Father married his current wife (“Stepmother”) and established a household in the Houston area with her. Father and .Stepmother had met in May 2013, and Stepmother met Child at a gathering of Father’s family in July 2013. Stepmother works as a pharmaceutical representative and, like Father, has a flexible schedule. Stepmother has two children from a previous marriage, a seventeen year-old son and ten year-old daughter at the time of trial, who live with Father and Stepmother fifty percent of the time; Father has two daughters from a prior marriage, twelve and fourteen years old at the time of. trial, who live in Missouri and also spend visitation periods with him in his Houston area home.
Child attended Father’s wedding and spent the 2012 Thanksgiving holiday with *325 Father and his family in Missouri. Mother alleges .that when Child returned on December 1, 2012 from Missouri,, she observed behaviors that made her suspect Child had been sexually abused. Based on these behaviors, Mother .contacted Child’s pediatrician, who referred her to the Audrey Hepburn Care Center at Children’s Hospital in New Orleans. Mother severed contact between Child and . Father, and scheduled an appointment at the Audrey Hepburn Care Center for Child to be evaluated for sexual abuse on December 24, 2012, the first available appointment.
On December 5, 2012, the district court held a hearing on the parties’ cross-motions for contempt, based on allegations by both parties that the other was in violation of the July 18, 2011stipulated custody decree. At that hearing, the district court ordered the July 18, 2011 stipulated decree be maintained, appointed liaren Houghtaling as parenting coordinator [3] with the parties to share the cost, and appointed Father manager of the couple’s immovable property.[4]
On December 24, 2012, Child was interviewed by Anne Troy, a forensic pediatric nurse at Children’s Hospital; and an investigation was opened by the Louisiana Department of Children and Family Services (“DCFS”) based on suspected abuse or neglect of Child.
On January 3, 2013, Mother filed a second petition for protection -from abuse[5] against Father, alleging that he sexually abused Child. The petition contained numerous allegations regarding the behaviors Mother had observed following the Thanksgiving trip to Missouri. An ex parte protective order was entered the same date, and a hearing set for January 24, 2013. The protective order hearing was continued several times on agreement by the parties due to discovery issues.
Following a status conference on February 4, 2013, the court appointed Dr. Sarah Hinshaw Fuselier as a play therapist to work with Child and make recommendations to the court concerning whether abuse had occurred, with the parties to.share the costs.
On February 23, 2013, the DCFS notified Father that the investigation of suspected child abuse or neglect concerning á child in his care was closed based on its finding that the abuse allegations against him were “invalid (not justified),” because the DCFS “did not find sufficient information, to support a finding of abuse or neglect.”
On March 5, 2013, Father filed for a Rule for Contempt, Attorney’s Fees, and to Change Custody, Father alleged that material changes in circumstances had occurred which made it in Child’s best interest to grant Father sole custody. *326 March 7, 2013, the district court amended the protective order to allow Father supervised visitation with Child, and re-set the hearing on rule for April 3, 2013.
On April 3, 2013, the district court dismissed without prejudice Mother’s second petition for protection from abuse. The court recited in its judgment that its decision was based on the recommendation from the child’s therapist, Dr. Fuselier,[6] and on the finding by the DCFS that there was insufficient information to support a finding of abuse or neglect by Father. On the same date, the court also appointed Tiffany Boveland, pro bono, as an attorney for Child.
Thereafter' (though the exact timing is unclear from the record), Mother, who had previously taken Child to a Dr. Niemeier, took Child .to a counselor at Metropolitan Battered Women’s Services, and had Child placed on a waiting list for a" counselor associated with her church. She also recontacted Anne Troy and brought Child for an emergency room visit at Children’s Hospital on March 20, 2013.[7]
On April 13, 2013, a hearing was set on a Motion to Compel and Rule for Contempt filed by Father, Following a pre-trial conference, the court appointed Dr. Alan James Klein to perform a custody evaluation. The court ordered Father to continue with supervised visitation, and again prohibited the parties from taking Child to see any mental health professionals besides Dr. Fuselier.
On December 17, 2013, Father filed a new Motion for Relocation Authorization and Change of Custody seéking sole custody and alleging that the proposed relocation was made in good faith -and was in Child’s best interest. He further alleged that he was employed in Houston prior to his and Mother’s physical separation, that he had relocated permanently in the Houston area, that moving Child to the Houston area would allow Child to be much closer to Child’s sisters, that Father had recently remarried and that Child had a good relationship with' Stepmother, that Father’s parents live in Houma, Louisiana, which would facilitate visitation with Mother, and that Mother had "demonstrated instability by her pursuit of abuse allegations. Alternatively/ he requested joint custody with himself as domiciliary parent.
On January 9 and 10, 2014, the district court held the trial on Father’s “Rule for Relocation, Set. Custody and Reset” filed on December 17, 2013 and “Rule to Change Custody” filed on March 5, 2013. Father was represented by counsel, as was Child, and Mother proceeded pro se.
On the morning of the trial, the district court provided the parties with Dr. Klein’s report, and informed them that Dr. Klein would testify that day at 1:00 p.m. At the request of counsel for Father, the court allowed a fifteen minute recess for all parties and counsel to review Dr. Klein’s re *327 port. When the trial resumed, Mother did not request a continuance.
The first witness called in Father’s case was Stepmother. Stepmother testified, inter alia, that her relationship with Child was new but positive, that she felt that it was important fox; Child to have a relationship with both parents, that she saw her role as supportive and — while acknowledging that poor communication between Mother and Father was an issue — stated that she was willing to do what she could to facilitate a good relationship between Child and Mother.
Following a recess for lunch, when counsel for Father called Dr. Klein to the stand, Mother stated for the first time that she would like to continue the matter, due to her limited time to review Dr. Klein’s report. After the district court judge explained that Mother should have raised her objection earlier, before an entire witness’s testimony and before Dr. Klein had cancelled all of his afternoon appointments to appear in court, and that he was there for the purpose of her to cross-examine him, Mother agreed to go forward.
Dr. Klein testified, inter alia, .that folr lowing his appointment to conduct a custody evaluation, he collected documentation from attorneys, and met with Father twice and Mother three times in addition to doing psychological testing on parents, Stepmother, and Child. He saw Child once with Father and once with Mother. He reviewed therapists’ reports, medical records, and the DCFS documentation.
Dr. Klein observed no major behavioral issues in Child that caused him concern, but recommended play therapy to address the ongoing conflict between the parents which he felt was affecting Child. He considered a parenting coordinator to be in Child’s best interest. He felt that Child needs both parents in his. life but they need to learn to communicate reasonably with one another.
Dr. Klein found both Mother and Father nurturing and attentive. Child’s relationship with Father was positive, although he acknowledged that Father’s personality style may interfere with promoting Child’s relationship with Mother. However, Dr. Klein said he also sensed that Father wants to do the right thing for his son. On the other hand, Dr. Klein was very worried that'Mother’s preoccupation with abuse allegations would negatively affect her ability to promote a relationship between Father and Child. ’
Dr. Klein testified that, he did not think Mother disbelieves what she says or is maliciously lying about the abuse allegations. He stated that he performed a custody evaluation, not a sexual abuse evaluation, which was performed by another professional who had seen Child. He admitted that Child’s age would make it difficult for him to disclose, and for professionals to verify any abuse allegations.
Dr. Klein opined that Father and Stepmother’s home provided'⅛ good, clean living environment," and he considered’ it to be in Child’s best interest to primarily live with Father. He recommended joint custody with Father designated as domiciliary parent, noting that it was critically important that Child has a lot of contact with Mother through visitation.
h At the close of Dr. Klein’s testimony, Mother objected when counsel for Father sought to .introduce Dr. Klein’s report into evidence, again citing her limited time to review the report. The district court judge reiterated that Mother had had an opportunity to cross-examine Dr. Klein (and in fact commented, that Mother had done a good job of it). Mother’s objection was overruled, and the report was admitted into evidence.
*328 The next witness was Mother. She testified, inter alia, that she.was on leave from her doctoral studies in counseling and had completed her course work with only her. dissertation remaining to complete. She had an interview lined up for a job with'the sheriffs office and. two private counseling clients. On the question of whether she still believed that Father had sexually abused Child, Mother vacillated but ultimately indicated that she thought he had. Mother also testified the she still sees behaviors in Child that she considers to be evidence of sexual abuse. While she acknowledges that a lot of Child’s behaviors are not abnormal for his age, she links them to molestation because of their timing after the-Missouri visit. She stated that she believed Child is not safe with Father, and that Father presented a “possible danger” to Child.
Father was the last witness and testified, inter alia, that prior to the July 18, 2011 stipulated custody decree,' he and Mother agreed to move to Houston, and he could not have kept his current job without living in Houston. He didn’t strongly, advocate for sole custody or domiciliary parent status, at the time of the initial custody decree, because he was then living in a corporate rental with other salesmen. Father stated that he presently has a family home with a bedroom for Child and has found a great school for Child in Texas. He testified that if named domiciliary parent he would consult with Mother regarding any medical or education decisions. He also said that Child has a great relationship with his half-sisters and would be able to see them more- often.
Father acknowledged that he was not without fault in the difficult interactions with Mother, but stated that he will try to be better about this and keep communication open and not use derogatory remarks. He stated his willingness to go to family therapy, testifying that “I will do anything I have to do to make [Child] well-adjusted.” Father testified that he had never sexually abused Child. At the end of mov-ant’s case in chief, the Court directed Mother to put on whatever additional testimony. she wished. Mother, proceeding pro se, called no witnesses.
On January 23, 2014, the district court entered its considéred judgment maintaining joint custody of Child, changing the designation of domiciliary parent to Father, and awarding Mother visitation of Child every other weekend, certain holiday periods, and for a majority of the summer. Accordingly, the court allowed Father to relocate Child, to Texas. Mother appealed the district court’s decision to this Court. This Court remanded the case to the district court with instructions to amend the judgment to identify the La. C.C. art. 134 and/or La. R.S. 9:355.14 factors considered in reaching its January 23, 2014 decision.[8]
In accordance with our instructions, on December 11, 2014, the district court entered an amended judgment and reasons for judgment for the January 2014 trial, in which -it applied the factors set forth in Louisiana Civil Code article 134 and La. R.S. 9:355.14. The district court found that many of the factors in both inquiries were neutral — that is, they did not favor one parent over the other. However, on balance, the court found that an analysis of the other factors supported a finding that Father should be designated domiciliary parent, and Child should be relocated with him to Houston.
On December 22, 2014, Mother filed a motion for a new trial on the December 11, 2014 amended judgment, which was denied on January 6, 2015.
*329 Mother appeals the district court’s amended judgment of December 11, 2014, entered following trial on Father’s motions captioned “Rule for Relocation, Set Custody and Reset” filed on December 17, 2013 and “Rule to Change. Custody” filed on March 5, 2013, in which the district court denied sole custody to Father, and instead granted both parents joint custody and named Father domiciliary parent, and allowed Father to relocate Child’s principal residence to the Houston, Texas area. Mother argues that the district court erred in (1) naming Father domiciliary parent, (2) permitting Child’s relocation to Texas with his father; (3) denying her a continuance of the trial to prepare for Dr. Klein’s report, and (4) denying her motion for a new trial. We discuss each assignment of error in turn.
DISCUSSION
A district court’s determination in modifying custody “is entitled to great weight and will not be disturbed absent a clear showing of abuse of discretion.” Schmidt v. Schmidt, 2008-0263, p. 9 (La.App. 4 Cir. 2/11/09), 6 So.3d 197, 203. “An appellate court may not set aside a trial court’s finding of fact in the absence of ‘manifest error? or unless it is ‘clearly wrong.’ ” Id.; see also, Mimms v. Brown, 2002-1681, p. 11 (La.App. 4 Cir. 9/3/03), 856 So.2d 36, 43; AEB v. JBE, 99-2668 (La.11/30/99), 752 So.2d 756, 761. However, when an “error of law skews the trial court’s finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo.” Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731, 735. If “the legal error does not affect all the [fact-finder’s] findings, the appellate court should confine its de novo review to only those findings that have been interdicted by the error.” Banks v. Children’s Hosp., 2013-1481, p. 13 (La.App. 4 Cir. 12/17/14); 156 So.3d 1263, 1272, citing Picou v. Ferrara, 483 So.2d 915, 918 (La.1986); Lam ex rel. Lam v. State Farm Mut. Auto. Ins. Co., 2005-1139, p. 3 (La.11/29/06), 946 So.2d 133, 135-36.
A. Modification of Custody—Change of Domiciliary Parent
“In a decree of joint custody the court shall designate a domiciliary parent....” La. R.S. 9:335(B)(1); see generally, Hodges v. Hodges, 2015-0585 (La.11/23/15), 181 So.3d 700. “The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that, the child has frequent- and continuing contact with both parents.” La. R.S. 9:335(B)(2). Thus, by seeking to change the domiciliary parent, Father sought to modify the original July 18, 2011 custody decree.
A custody decree may be either a stipulated decree or considered decree. Evans, 708 So.2d at 738; see also, Mimms, 2002-1681, at p. 10-11, 856 So.2d at 42-43. A stipulated custody decree is one where “the parties consent to a custodial arrangement, and no evidence of parental fitness is taken.” Id. In contrast, a considered custody decree is “an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children.” Id. In the case sub judice, the original joint custody decree of. July 18, 2011 was a consent judgment, and is therefore a stipulated custody decree.
 The foremost consideration in custody determinations is the best interest of the child. La. Civ.Code art. 131. This also applies to actions to modify custody. *330 La. Civ.Code art. 131, cmt. d. However, to modify an existing decree, before reaching the best interest inquiry, a litigant must first meet the jurisprudentially established requirement of a material change in circumstances. Evans, 708 So.2d at 738. This additional burden is imposed because our courts have recognized that a child “may be irreparably damaged not only by a mistaken change in custody but also by the effects of an attempted dr threatened change of custody on grounds that are less than imperative.” Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986); see also, Schmidt, 2008-263 at p. 11, 6 So.3d at 205.
Thus, a party seeking to. modify a stipulated custody decree bears the burden of proving by a preponderance of the evidence that “(1) that there has been a material change of circumstances since the original custody decree was- entered, and (2) that the proposed modification is in the best interest of the child.” Evans, 708 So.2d at 738.
1. Material Change in Circumstances
The district court did not make any finding regarding a material change in circumstances; we therefore consider that question de novo based on our review of the record.[9]
Courts have found a material change of circumstance under a variety of circumstances: communication problems between the parties;[10] the interstate move of a parent;[11] the child’s reaching school age;[12] the child’s stated desire to live with a particular parent;[13] the ex-wife’s addiction and ongoing treatment;[14] and a parent’s release from prison,[15] to name a handful. Especially relevant to the instant case are those in-which a father’s remarriage, move to a new home, and corresponding improved living situation have been found to be a material change in circumstances.[16]
In this case, on de novo review we find that a material change in circumstances occurred as a result of Father’s remarriage and establishment of a permanent household, and in the change of dynamics of Mother and Father’s relationship following the July 18, 2011 stipulated custody decree. In his original Reconven-tional Demand, Father sought primary custody and to relocate Child to Texas with him. However, as Father testified at trial, at the time the stipulated custody decree was entered, he was in transition between New Orleans and Houston, and living in a furnished apartment which he shared with other salesmen. He was not in a position to be the domiciliary parent, and therefore consented to the decree granting Mother domiciliary status and granting him visitation. As he testified at *331 trial, he now has a stable, permanent family home in the Houston area near a good school. As well, Child’s half-sisters, with whom Child is close, spend extended time with Father at his Houston area home. We find that Father has met has burden of demonstrating a material change of circumstances has occurred since the original stipulated custody decree.

2. Best Interest of the Child

As previously noted, we may not set aside the district court’s factual findings “in the absence of ‘manifest error’ or unless [they are] ‘clearly wrong.’ ” Schmidt, 2008-0263, at p. 9, 6 So.3d at 203. Following Mother’s initial appeal, we remanded this matter to the district, court with instructions to identify the “best interest” factors considered in reaching its decision, which it did. Because the district court’s “best interest of the child” inquiry was not tainted by legal error, we review under the manifest error standard. Banks, 2013-1481 at p. 12, 156 So.3d at 1272.
Louisiana Civil. Code Article 134 guides the court in making this determination and provides the following list of factors to be considered:
(1) The love, affection, and, other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child. .
(3) The capacity and disposition of each party to provide the ehild with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived, in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and cóinmunity History of the child.
(9) The reasonable preference of the child, if the. court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate-and encourage a close and continuing relationship between the child and the other party.
(12) The distance between the respective residences' of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
These factors are not exclusive, and the court is “not required to make a mechanical evaluation” of each factor. Moore v. Moore, 47,947, p. 9 (La.App. 2 Cir. 3/6/13); 111 So.3d 1120, 1125.
In the reasons for judgment, the district court found that many of the article 134 factors were neutral and did not weigh in favor of either party) For example, the court noted that Child enjoys the love and affection of both of his parents, and has a strong emotional attachment to both Mother and Father. However, the court, in applying factors two, seven, ten, and twelve, found they weighed in Father’s favor. We have reviewed the record, the trial testimony, and the district court’s findings, and find no manifest error. Moreover, we are keenly aware of the *332 deference owed to the district court, who has first-hand knowledge of and' extensive experience dealing with the parties, in this custody matter. Accordingly, the district court’s decision designating Father as domiciliary parent should be affirmed.
B. Change of Child’s Principal Residence/Relocation
Because Father now lives in Texas, designating him as . domiciliary parent necessarily requires relocation of Child. Accordingly, we must consider the statutory relocation factors in addition to the “best interest” factors. See Bonnecarrere v. Bonnecarrere, 2011-0061, 11 (La.App. 1 Cir. 7/1/11); 69 So.3d 1225, 1234.
The district court’s determination in a relocation case “will not be overturned absent a clear showing of abuse of discretion.” Curole v. Curole, 02-1891, p. 4 (La.10/15/02), 828 So.2d 1094, 1096. “In reviewing the record to determine whether the trial court’s ultimate conclusion constitutes an abuse of discretion, an appellate court must accept each factual finding the trial court made in arriving at that conclusion, unless the particular factual finding is manifestly erroneous.” LaGraize v. Filson, 2014-1353, p. 15 (La.App. 4 Cir. 6/3/15), 171 So.3d 1047, 1054.
“‘Relocation’ means a change in the principal residence of a child for a period of sixty days or more, but does not include a temporary absence from the principal residence.” La. R.S. 9:355.1(2).
“Principal residence of a child” means:
(a) The location designated by a court to be the primary residence of the child.
(b) In the absence of a court order; the location at which the parties have expressly agreed- that the child will primarily reside.
(c) In the absence of a court order or an express agreement, the location, if any, at which the child has spent the majority of time during the prior six months.
La. R.S. 9:355.1(1).
“The person proposing relocation has the. burden of proof that the proposed relocation is made in good faith and is in the best interest of the child.” La. R.S. 9:355.10.
In the instant case, the good faith of the relocation is not at issue. Mother and Father had planned to move together to Houston, before the divorce for Father’s job, and Father testified that he had to live in the Houston area to perform his job. We thus consider the best interest of the child, factors.
Louisiana Revised Statute 9:355.14 sets forth the factors to be considered in determining whether a contested' relocation is appropriate and in the best interest of the child, as follows:
(1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the ' non-relocating person, siblings, and other significant persons in in the child’s life.
(2) The age, developmental' stage, heeds of the child, and the likely impact the relocation will-have on the child’s physical, educational, and emotional development.
(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and- financial circumstances of the parties.
(4) The child’s views about the proposed relocation, taking into consideration the age and maturity of the child. '
*333 (5) Whether there- is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party. .-
(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.
(7) The reasons of each person for seeking or opposing the relocation.
(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.
(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation,- including child support, spousal support, and community property, and alimentary obligations. .
(10) The feasibility of a relocation by the objecting person.
(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.
(12) Any other factors affecting the best interest of the child.
In determining the child’s best interest, the court shall consider the benefits which the child, will derive either directly or indirectly from an enhancement in the relocating parent’s general quality of life, LaGraize v. Filson, id.; see also, Gathen v. Gathen, 10-2312, p. 8 (La.5/10/11), 66 So.3d 1, 7.
In applying the relocation factors in this case, as -with the domiciliary parent factors, the district court found' that many of the factors were neutral and did not weigh in favor of either party. However, the court specifically discussed factors three; five, and six, and found that they weighed in favor of permitting the relocation of Child to the Houston area with Father. We have reviewed the record; the trial testimony, and the district court’s findings and conclude .that the district court did not err in its, findings. And once more, we are especially cognizant of the deference owed to the district judge in custody matters. Accordingly, the district court’s ruling permitting relocation to the Houston area with Father should be affirmed.
C. Denial of Motion to Continue
Appellant also argues that the district court erred in denying her motion to continue the trial to allow more time to review the report of the court-appointed mental health expert, Dr. Klein;
In a custody or visitation proceeding, “[t]he court may order aft evaluation of a party or the child ... for good cause shown. The evaluation shall be made by a mental health professional selected by the parties or by the court.” La. R.S. 9:331(A). Further, “[t]he mental health professional shall provide the court and the parties with a written, report. The mental health professional shall serve as the witness of the court, subject to cross-examination by a party.” La. R.S. 9:331 (B).
In the case sub judice, the district court ordered an evaluation by Dr. Klein pursuant to these provisions, Dr. Klein provided his written' report and served as a witness,- and as such, 'the parties were entitled to cross-examine him. However, while the parties did cross-examine Dr. Klein at the trial of this matter, they were *334 provided with his report the morning of trial and given about fifteen minutes to review it. While Mother did not object at the beginning of the trial, she did move to continue after returning from the lunch recess on the first day of trial, following the testimony of one witness and immediately prior to Dr, Klein’s testimony. The district court denied the continuance, and Mother appeals that denial.
“The denial of a motion for continuance will' not be disturbed absent a showing of an abuse of discretion by the trial court.” Newsome v. Homer Mem’l Med. Ctr., 2010-0564, p. 2 (La.4/9/10), 82 So.3d 800, 802. “[A]n abuse of discretion occurs when such discretion is exercised in a way that deprives a litigant of his day in court.” Walker v. Aulds, 28,968, pp. 3-4 (La.App. 2 Cir. 12/11/96), 685 So.2d 421, 423. While we recognize that the short time to review Dr. Klein’s report was not ideal, we do not find that this circumstance deprived Mother of her day in court; Mother did, in fact, have and take the opportunity to cross-examine Dr. Klein and therefore was not deprived of her day in court.[17]
We also observe that while Dr. Klein’s report supports the district court’s ultimate findings, the record and trial testimo: ny include numerous facts corroborating his conclusions. In other words, even if Dr. Klein’s report and testimony had been excluded, the remaining record evidence adequately supports the findings of the district court. Accordingly, the. lack of preparation time for cross-examination did not prejudice Mother or infringe,upon her due process rights, and the district court did not abuse its discretion in denying the continuance. ..
D. Denial of Motion for New Trial
Mother moved for a new trial pursuant to La. C.C.P. articles 1972(1) and 1973. Article 1972(1) provides that “[a] new trial shall be granted, upon contradictory motion of any party ... when the verdict or judgment appears clearly contrary to the. law. and the evidence.” In addition, article 1973 provides that “[a] new trial may be granted in any case if there is good ground, therefor, except as otherwise provided by law.” A trial judge has broad discretion in the granting or denying .a motion for new trial, and we review a denial under an abuse of Indiscretion standard. Jackson v. Bally’s Louisiana, Inc., 2009-1574, p. 4 (La.App. 4 Cir. 4/7/10) 36 So.3d 1001, 1003-04, citing *335 Campbell v. Tork, 2003-1341, p. 4 (La.2/20/04), 870 So.2d 968, 971.
Mother sought a new trial on the grounds that she was unable to adequately prepare to cross-examine the court-appointed custody evaluator, Dr. Klein, and that a motion filed on December 5, 2014 by Father seeking a protective order based on allegations of abuse by Mother undermined the reasoning supporting the district court’s findings made in connection with the January 2014 trial, thereby requiring a new trial.
With respect to the first argument, we have already examined the issue of the late-filed report of Dr. Klein, supra, and found no prejudicial error resulted. With respect to the second issue, we note that it is premised upon events occurring on December 5, 2014, approximately eleven months after the trial of this matter. Those events can have no bearing on the law and the evidence adduced at the January 2014 trial. The December 5, 2014 filing could not even form the basis for a motion premised on 1972(2), governing newly discovered evidence, since ‘“newly discovered evidence’ has been held to' be evidence which existed at the time of trial, but was only discovered after the conclusion of the trial.” Hansel v. Holyfield, 2000-0062, p. 6 (La.App. 4 Cir. 12/27/00); 779 So.2d 939, 944. In this case, the evidence pointed to in support of the new trial motion did not exist at the time of the trial.
“A motion for new trial may be summarily denied in the absence of a clear showing in the motion of facts or law reasonably calculated to change the outcome or reasonably believed to have denied the applicant a fair trial.” Schmidt, 2008-0263, at p. 21, 6 So.3d at 210. In the instant case, as- the foregoing demonstrates, Mother did not make the necessary showing to receive a new trial, and the district court therefore- did not abuse its' discretion in denying the motion for new trial. =
For all'of the' foregoing reasons, the judgment of the district affirmed.
AFFIRMED.
BELSOME, J., concurs in the result.

. The record includes the judgment of dismissal reflecting the filing of a petition for .protection from abuse on October 12, 2015. The actual petition could not be located within the record provided on appeal.

. “On motion of a party or on its own motion, the court may appoint a parenting coordinator in a child custody case for good cause shown if the court has previously entered a judgment establishing child custody....” La. R.S. 9:358.1. “Parenting coordination is a child-focused alternate dispute resolution process in which a duly qualified parenting coordinator assists parents or persons' exercising parental authority to implement a parenting plan by facilitating the resolution of their disputes in a timely manner and by reducing their child-related conflict so that the children may be protected from the impact of that conflict. The parenting coordinator assists the parties in promoting the best interests of the children by reducing or eliminating child-related conflict through the use of the parenting coordination process.” Id., cmt, a,

. The rulings were made in open court on December 5, 2012; the written judgment-was signed on January 3, 2013.

. See supra, note 2; while the record reflects the dismissal of a prior petition for protection from abuse, none is found in the record.

. At a hearing held on February 4, 2013, Dr. Fuselier was appointed to do play therapy and to make an independent investigation of the sexual abuse allegations. Her report has not been made part of the record in this case, though it is referred to by. the district court, Child's attorney Tiffany Boveland, and custody evaluator, Dr. Alan Klein. In her trial testimony, Mother acknowledged that Dr. Fuselier found no evidence that Child had been sexually abused by Father,

. Despite the fact that the exact timing of. the visits (except for the E,R. visit). is unclear from Mother's testimony and the record, some of them took place after the DCFS’s February 23, 2013-finding that the allegations . were unjustified, and after the district court judge first ordered the parties to stop seeing any other professionals besides Dr. Fuselier (in open court on February 14, 2013 and in a Judgment entered on March 12, 2013).

. Bonnette v. Bonnette, unpub., 14-550 (La.App. 4 Cir. 10/8/2014), 2014 WL 5737094.

. While with this omission the district court pretermitted consideration of the first prong of the two-pronged material change/best interest test, we are able to render judgment on the record by conducting the necessary inquiry and determining the essential material facts de novo. See Evans, 708 So.2d at 735.

. Harvey v. Harvey, 10-1338 (La.App, 3 Cir. 3/9/11), 2011 WL 803778 (unpub'd).

. Evans, 708 So.2d 731.

. Shaffer v. Shaffer, 2000-1251 (La.App. 1 Cir. 9/13/00), 808 So.2d 354.

. Wages v. Wages, 39,819 (La.App. 2 Cir. 3/24/05), 899 So.2d 662.

. Cothern v. Cothern, 05-1364 (La.App. 3 Cir. 5/3/06), 930 So.2d 228.

. Matthews v. Matthews, 93-0559 (La.App. 1 Cir. 11/24/93), 633 So.2d 342.

. See, e.g., Pizzolato v. Hihar, 02-53 (La.App. 5 Cir. 6/26/02), 822 So.2d 835; Hebert v. Blanchard, 97-550, p. 5 (La.App. 3 Cir. 10/29/97), 702 So.2d 1102, 1105.

. We note that all of the cases cited by " Mother in her brief for the proposition that the denial of her motion to continue violated her due process rights are distinguishable, in that they involve situations where the denial of the continuance did amount to the denial of the litigant's day in court. For instance, in Anderson v. Cunningham, 34,859 (La.App. 2 Cir. 5/9/01), 786 So.2d 940, the trial court denied a continuance that would have allowed the mother, a welfare recipient, enough time to earn the funds to travel to the hearing. The appellate court found that the trial court erred when it terminated the mother’s parental rights in a hearing where she was not present because she didn’t have the funds to travel to the hearing. Id. In Walker v. Aulds, 28-968 (La.App. 2 Cir. 12/11/96), 685 So.2d 421, the trial court was found to have erred when it denied a father custody, after denying a motion to continue so the father could retain legal counsel, when the father had learned of the custody hearing four days prior to the hearing. In Douthit v. Douthit, 259 So.2d 426 (La.App. 2 Cir.1972), the trial court was found to have erred in denying a continuance when at trial, the defendant raised an entirely new defense of reconciliation and condonation, which extinguished plaintiff's claim, and for which (absent the continuance) he was unable to call any witnesses. In all of the foregoing cases pointed to by Mother, the trial court’s denial of the continuance resulted in much harsher consequences than those in the case' at bar, resulting in the essential deprivation of the litigant’s day in court.