MURPHY, J.
In this tutorship proceeding, appellant appeals the trial court's ruling on the portion of a motion for new trial which required that she consult with a court-appointed mental health professional prior to any change in tutorship and supervised visitation. For the reasons that follow, we affirm the ruling of the district court in part, and reverse in part.
PROCEDURAL HISTORY
This matter arises in the context of a tutorship proceeding for J.R.,[1] an adult with a permanent diagnosis of Down syndrome, who will require continuing tutorship throughout his life. The parties to the action are J.R.'s divorced parents, consisting of his mother, L.L., and his father, J.R., Sr. The record shows that on April 3, 2009, J.R.'s parents were appointed as his co-tutors, and his sister, J.A.R., was appointed to be his undertutor. On November 5, 2014, J.R., Sr. filed a motion to remove L.L. as a co-tutor, citing concerns over J.R.'s developing behavioral issues and L.L.'s decision-making regarding J.R. when he was in her care. After several continuances and, following a hearing held on January 21, 2015, the trial court issued judgment on February 3, 2015, granting J.R. Sr.'s motion, making him the sole tutor, and ordered that L.L. have supervised visitation with J.R. once per week at the "discretion" of J.R., Sr. The trial court further ordered that "neither the tutorship ruling or the supervised visitation shall be changed or modified unless [L.L] seeks mental assessment/treatment with Dr. Daphne Glindmeyer."
On August 26, 2015, L.L. filed a timely motion for a new trial, which was ultimately continued without date by consent of all parties on January 6, 2016. On October 21, 2016, L.L. moved to set her motion for *1258 new trial for hearing. Following a hearing on November 16, 2016, on March 17, 2017, the trial court granted L.L.'s motion "on the limited issue of the 'supervised visitation once a week at the discretion of [J.R., Sr.],' " and a hearing date was set on April 10, 2017, "for re-argument and further evidence on that issue alone."[2] On April 7, 2017, L.L. filed a motion for appeal, which was granted on April 10, 2017.
LAW AND ANALYSIS
In her sole assignment of error, L.L. asserts that the trial court erred in denying the motion for a new trial as it relates to the mandatory order contained in the judgment of February 3, 2015, requiring appellant to seek "mental assessment/treatment" from Dr. Daphne Glindmeyer. Specifically, L.L. argues that, "[t]he condition that appellant must seek mental assessment/treatment with Dr. Glindmeyer or she is prohibited from availing herself of attempting to modify this harsh treatment is a clear abuse of discretion."
To evaluate whether a modification of custody[3] is in the child's best interests, the court must be guided by La. C.C. art. 134. In particular, La. C.C. art. 134(7) provides that one consideration is "[t]he mental and physical health of each party." Further, La. R.S. 9:331, provides:
A. The court may order an evaluation of a party or the child in a custody or visitation proceeding for good cause shown. The evaluation shall be made by a mental health professional selected by the parties or by the court. The court may render judgment for costs of the evaluation, or any part thereof, against any party or parties, as it may consider equitable.
B. The court may order a party or the child to submit to and cooperate in the evaluation, testing, or interview by the mental health professional. The mental health professional shall provide the court and the parties with a written report. The mental health professional shall serve as the witness of the court, subject to cross examination by a party.
At the hearing on January 21, 2015, following the testimony of several witnesses and the introduction of evidence, the trial court made observations on the record about L.L.'s mental state and its concern regarding the effects it had on L.L.'s tutorship of J.R.:
There's no doubt that [L.L.] loves her son, but her methods of dealing with people have left much to be desired. And while she prides herself as a good communicator, it has been evident in more than one scenario and through multiple of the witnesses here and even her own counsel throughout these proceedings, that she's threatened pretty much every person involved in this case. It's not the type of communication that is going to achieve the end which I think even *1259 [L.L.] desires. I think she's unable to see, due to her own emotions, the damage that she's caused to these relationships by that behavior. And The Court is definitely concerned with her inability to discern between her own emotions and the best interests of [J.R.].
Her emotional and financial instability has been or is a grave concern to The Court. [J.R.] is a special child and he is in need of a lot of continuity. We have heard that from multiple parties. We have heard that from the doctor involved in this case. Dr. Smith is an uninterested party and hertestimony provided insight and support for the notion that [L.L] has not been fully cooperative with [J.R.'s] caregivers.
And The Court is further moved by [J.A.R.'s] testimony, that although she knows her mother has the best interests for [J.R.], she's unable to carry them out due to her own volatile emotions. Therefore, The Court is going to grant [J.R., Sr.'s] motion and order him as the sole tutor with [J.A.R.] to remain as under tutor. [L.L.] will continue to have supervised visitation on a weekly basis with [J.R.] at [J.R., Sr.'s] discretion with a supervisor to be appointed by him.
[L.L], I have to caution you, that if the behavior that you have engaged in with [J.R.'s] other caregivers in threatening to report them to authorities over and over again, if that continues during these visitations with whoever [J.R., Sr.,] has appointed to be the supervisor-and if you use your own PCA, I am going to let that be up to you-This Court will reconsider whether or not those visitations should continue.
The Court is also ordering that no changes will be made to this tutorship or to the visitation agreement unless [L.L.] completes a mental health evaluation to be conducted by Dr. Daphne Glindmeyer, with her to bear the costs.
...
I don't believe that This Court has the appropriate jurisdiction to order her for treatment, although This Court most definitely exercises jurisdiction over [J.R.'s] well being and his care by virtue of the tutorship proceedings. I do not believe that It has the authority to order [L.L.] into any therapy. But I would urge you, [L.L.] in light of what This Court considers to be some cognitive dysfunction on your part that became evident during the trial to please seek assistance in that regard.
It is clear from the foregoing that the trial court found that the mental condition of L.L. was at issue and that good cause existed for requiring her to submit to a mental evaluation. This, as well as the fact that the instant proceeding specifically involved custody or visitation, invoked the application of La. R.S. 9:331.
The trial court's decision in child custody matters is entitled to great weight and it will not be overturned absent a clear showing of an abuse of discretion. Bergeron v. Bergeron , 492 So.2d 1193, 1196 (La. 1986). In this case, where the record supports a finding that L.L.'s behavior and mental state conflicted with L.L.'s ability to act in J.R.'s best interest, pursuant to the authority vested in the court by La. R.S. 9:331, we find no abuse in the trial court's decision to require that L.L. undergo a mental evaluation as a prerequisite to any change in custody or visitation.[4] However, we do not find that the trial court's *1260 February 3, 2015 order provides sufficient guidance to the parties, or to Dr. Glindmeyer, as to the parameters or objectives of the evaluation in accordance with La. C.E. art. 706(A), which states:
In a civil case, the court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless he consents to act. A witness so appointed shall be informed of his duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of his findings, if any; his deposition may be taken by any party; and he may be called to testify by the court or any party. [Emphasis added.]
While the transcript of the January 21, 2015 hearing indicates the trial court's acknowledgement that it had no authority to "order [L.L.] into any therapy," nevertheless, in its February 3, 2015 order, the trial court appears to require L.L. to undergo "treatment" with Dr. Daphne Glindmeyer prior to petitioning the court for any further modification of the tutorship ruling or a change in the visitation schedule. In her motion for new trial, L.L. contended that her continuing treatment with Lincoln D. Paine, M.D., a psychiatrist, "constitutes substantial compliance with the last substantive paragraph of the Judgment." In an Exhibit to her motion for new trial, L.L. attached correspondence from Dr. Paine, dated June 19, 2015, which stated, in summary, that L.L. was not a threat to herself or to J.R. However, no new evidence regarding L.L.'s need for continuing or current treatment with Dr. Paine, or any other provider, was introduced at the November 16, 2016 hearing. Because the record does not demonstrate or substantiate L.L.'s need for future treatment, we find that the portion of the trial court's February 3, 2017, ruling which ordered L.L. to seek "treatment" with Dr. Glindmeyer as a prerequisite to requesting a change in tutorship or modification of visitation is premature, and, accordingly, reverse on that issue.
Further, the record reflects that L.L. has been assigned pauper status by the district court. Counsel for L.L. has also indicated that he has taken L.L.'s case pro bono. While we find that the trial court did not err in its appointment of Dr. Glindmeyer for an evaluation, the cost of such an evaluation to L.L. must not be cost prohibitive. Otherwise, L.L.'s financial status could prevent her from ever seeking a change in custody or visitation. By way of this opinion, we specifically order the district court to take into account L.L.'s ability to pay for the evaluation, and to, accordingly, tailor the parameters of any future evaluation to accommodate L.L.'s economic circumstances.
DECREE
For the foregoing reasons, the trial court's appointment of Dr. Daphne Glindmeyer to conduct an evaluation of L.L. is affirmed; however, the court must comply with the requirements of *1261 La. C.E. art. 706(A) and clearly define the parameters of the evaluation with all parties. The court must also ensure that the cost of such an evaluation is not cost prohibitive to L.L. Following any evaluation, Dr. Glindmeyer shall provide the court and the parties with her findings in accord with La. R.S. 9:331. The portion of the trial court's judgment compelling L.L. to undergo treatment with Dr. Glindmeyer is reversed. We remand the matter for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, REMANDED
JOHNSON, J., DISSENTS IN PART WITH REASONS
I respectfully disagree with the majority in upholding that portion of the February 3, 2015 judgment that orders L.L. to undergo a mental health evaluation by Dr. Daphne Glindmeyer prior to any modification to the tutorship ruling or the supervised visitation. I believe the entire portion of the February 3, 2015 judgment ordering a "mental assessment/treatment with Dr. Daphne Glindmeyer" for purposes of any future modification of tutorship or visitation should be stricken from the judgment.
I agree that the trial court has the authority under La. R.S. 9:331 to order a mental health evaluation, but only upon good cause shown at the time custody or visitation is at issue before the court. Here, had the trial judge ordered a mental health evaluation prior to rendering the February 2015 judgment that changed tutorship and ordered supervised visitation, she would have been within the authority of La. R.S. 9:331, as I believe good cause was shown at the January 21, 2105 hearing for such an evaluation to be ordered. However, the trial judge rendered a judgment on tutorship and visitation without any mental health evaluation.
I believe the standing order of a future mental health evaluation in the event any party seeks a subsequent change to the judgment is impermissible. La. R.S. 9:331 requires a showing of good cause prior to the order for a mental health evaluation. Logically, the "good cause" must exist at the time the court considers the custody or visitation issue. In this case, while the trial court would have the authority to order an evaluation if and when a party seeks modification of tutorship or visitation, such authority would be based only upon a showing of "good cause" for an evaluation at that time and could not rely on a showing of good cause that was made at the January 2015 hearing.
Additionally, I do not find the cases cited in footnote three of the opinion support the majority's conclusion that the trial court did not abuse its decision to require L.L. undergo a mental health evaluation as a prerequisite to any future, but not yet requested, change in custody or visitation. The cited cases simply affirm the ability of the trial court to order a mental health evaluation in connection with custody or visitation. In fact, in the cited case of Ferrand v. Ferrand , 16-7 (La. App. 5 Cir. 8/31/16); 221 So.3d 909, writ denied , 16-1903 (La. 12/16/16); 211 So.3d 1164, this court recognized the authority of the trial court to order a mental health evaluation and found the trial court should have ordered such an evaluation prior to ruling on custody. As such, we vacated the custody judgment and ordered the trial court to order a mental health evaluation prior to ruling. Here, no one is challenging the February 2015 change in tutorship or the ordered supervised visitation-the sole issue is the mandate of a future condition for *1262 a subsequent change that has not yet been petitioned for.
Accordingly, I would strike the entire portion of the February 3, 2015 judgment ordering that "neither the tutorship ruling or [sic] the supervised visitation shall be changed or modified unless [L.L.] seeks mental assessment/treatment with Dr. Daphne Glindmeyer."
WINDHORST, J., CONCURS WITH REASONS
I agree with the majority opinion, and concur to respectfully emphasize that while the dissent is well-reasoned, a strict reading of La. R.S. 9:331 does not necessarily require that the determination of whether good cause exists for an evaluation be made after the filing of a subsequent motion. The trial court has already heard evidence affecting custody and visitation in this case, from which it could have reasonably concluded that good cause for an evaluation exists, and that an evaluation would be in the best interest of the child prior to any change. Based on the particular facts presented by this case, and the evidence known to the trial court, I believe that the trial court's requirement of an evaluation prior to a change of custody or visitation is within the authority of La. R.S. 9:331.
Furthermore, the trial court has not refused to set or hear any possible future motions by appellant. The transcript shows that the trial judge, after stating her reasons for concerns, stated simply that no change in tutorship or in visitation will be made without an evaluation. I believe this was within the trial court's authority after the previous evidentiary hearing.

While J.R. is an adult, we will still refer to the parties by their first names and surname initials to ensure J.R.'s privacy, as provided for in Rule 5-2 of the Uniform Rules-Courts of Appeal.

We note that the new trial hearing was held on November 2, 2017, after which the trial court amended that portion of the February 3, 2015 judgment relating to visitation at the discretion of J.R., Sr. This amendment has no effect on the matter at issue in the instant appeal.

At the outset, we agree with L.L.'s unopposed assertion that even though this is a tutorship proceeding for an adult, the law on visitation and custody is applicable. Thus, the standard to apply is what is in J.R.'s best interest. Further, J.R., Sr.'s motion for removal of L.L. as a co-tutor, which was referenced in the trial court's February 3, 2015 order, invoked a finding under La. C.C.P. art. 4234 that "such removal would be in the best interests of the minor."

See , Ferrand v. Ferrand , 16-7 (La. App. 5 Cir. 08/31/16), 221 So.3d 909, writ denied , 16-1903 (La. 12/16/16), 211 So.3d 1164 ; Bonnette v. Bonnette , 15-0239 (La. App. 4 Cir. 2/17/16), 185 So.3d 321, writ denied , 16-0663 (La. 5/20/16), 191 So.3d 1072 ; Barker v. Barker , 14-0775 (La. App. 1 Cir. 11/07/14), 167 So.3d 703.